

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-19-2005

# Polat v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2519

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Polat v. Atty Gen USA" (2005). *2005 Decisions.* Paper 387.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/387

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2519

———

SAKIR POLAT,
                                      Petitioner

v.

ATTORNEY GENERAL OF
THE UNITED STATES,
                                      Respondent

———

On Petition for Review from a Final Order
of the Board of Immigration Appeals
BIA No: A79-399-963

———

Submitted Under Third Circuit L.A.R. 34.1(a)
September 30, 2005

Before: RENDELL, FUENTES, and WEIS, Circuit Judges

(Filed:    October 19, 2005)

———

OPINION OF THE COURT

———

FUENTES, Circuit Judge

        Petitioner Sakir Polat, a native and citizen of Turkey, challenges a decision of the

1

Board of Immigration Appeals ("BIA") upholding the denial by an Immigration Judge ("IJ") of his request for political asylum, withholding of removal and relief under Article III of the Convention Against Torture. Because the IJ's decision was supported by substantial evidence, we will affirm.

## BACKGROUND

### I.

Mr. Polat entered the United States on May 1, 2000 without a visa or other entry documents, and filed for political asylum. At the merits hearing on March 3, 2003 and in his statement in support of his application for asylum, Mr. Polat testified to the following facts:

Mr. Polat was a member of the Fazilet Party, a political party in Turkey that advocates a lessening of military control of the Turkish government. As a member of that party, Mr. Polat recruited new members and attended meetings. In August 1997, he was arrested with a group of other party members during a demonstration, and was beaten on his feet with sticks. He was released the next day after his brother paid a bribe to the police. In May 1999, Mr. Polat was again arrested at a Fazilet Party demonstration, and was threatened and beaten. After his family again bribed the police, he was allowed to "escape" from prison, about two weeks after he had been arrested. A warrant for his arrest was later sent to his home by mail, around August 1999. Mr. Polat submitted this warrant to the Court with a translation (JA 343), which reads, in pertinent part:

2

"To: Birth Department/ Yozgat/The person ehose [sic] identity is given below, Sakir Polat (accused) has been wanted by civil court decision dated 98/145. If that person comes to your department, kindly let us know./ Alparslan Dogan"

After he received this arrest warrant, Mr. Polat went into hiding. When his daughter was born, he returned home and stayed there for about twenty days. Mr Polat is afraid to return to Turkey because he believes that he will be thrown in jail and that his life will be in danger.

## II.

The IJ found Mr. Polat not credible and denied his application. First, the IJ did not believe Mr. Polat's claims that he had been arrested. She noted that Mr. Polat did not arrive in the United States until about a year after his second arrest, and that although he stated that he spent that time collecting money for the trip, he left and returned to Turkey several times during the same period on trips to the Netherlands, Spain, and Romania. He received exit visas for these trips. The IJ also pointed out that in an interview with authorities in the Miami airport after his arrival in the United States, and then a week later in a second interview, Mr. Polat stated that he had never been arrested. At the merits hearing, Mr. Polat explained that he had been asked whether he had ever committed crimes, and that he had said no (JA 176); he later stated that he didn't mention the arrests because he was not brought to a courtroom in the course of the arrests (JA 177).

The IJ also found not credible Mr. Polat's claim that he had received an arrest

3

warrant. She did not believe that a warrant would be mailed to his home, and noted that the warrant referred to a civil judgment and was mailed to the "birth department," shedding doubt on its relevance to a criminal arrest. Moreover, the IJ referred to an investigation of the arrest warrant by the Immigration and Nationalization Service (INS). On May 7, 2002, the INS filed with the IJ a memorandum from the Consul at the United States Embassy in Ankara, Turkey. (JA 316-18.) The memo indicated that following a request from the Department of Justice, the consulate investigated the authenticity of the arrest warrant submitted by Mr. Polat and contacted Alparslan Dogan, who purportedly had signed the arrest warrant. According to the memo, Commander Dogan stated that the warrant was fraudulent, that he was not the Commander in 1999, the year of the warrant, and that the signature was not his. Lastly, the memo stated that there were no outstanding arrest warrants against Mr. Polat in Turkey. Based on this information, the IJ found that Mr. Polat had an obligation to demonstrate that the document was reliable, and that he had not done so. The IJ did not find sufficient evidence that Mr. Polat had committed fraud by fabricating the warrant, however, and noted that the memo was hearsay.

Finally, the IJ stated that she did not believe that Mr. Polat would be in danger if he returned to Turkey, noting that Mr. Polat's brother and father are members of the Fazilet party and have remained in Turkey.

## STANDARD OF REVIEW

Where, as here, the BIA affirms the IJ's decision without opinion, this Court

4

reviews the decision of the IJ. Partyka v. Attorney General, 417 F.3d 408, 411 (3d Cir. 2005). The IJ's findings of fact are reviewed for substantial evidence. Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003). Adverse credibility determinations are similarly reviewed under a substantial evidence standard. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Where credibility determinations are "based on speculation or conjecture, rather than on evidence in the record," they are reversible, and "minor inconsistencies and minor admissions . . . 'are not an adequate basis for an adverse credibility finding.'" Id. (citations omitted).

## DISCUSSION

The IJ based her adverse credibility finding on three main points: (1) that Mr. Polat left and returned to Turkey several times after his second arrest and before his departure for the United States; (2) that in two interviews shortly after his arrival in the United States, Mr. Polat stated that he had never been arrested; and (3) that the arrest warrant submitted by Mr. Polat was not believable.

These three factors provide substantial evidence to support the IJ's holding. Mr. Polat's extensive travel after his purported second arrest and before his departure for the United States suggest that he was not in constant fear of arrest during this period. It is also notable that these trips required repeated interactions with the Turkish government to receive exit visas and a passport renewal. (JA 115-16.)

Generally, inconsistencies between an asylum seeker's airport statements and his

5

testimony before the IJ are not sufficient in themselves to support an adverse credibility finding; "[s]uch an interview is likely to be hurried; language difficulties arise; the results may be inaccurately recorded, and an arriving alien who has suffered abuse in his home country may be reluctant to reveal full information in his or her first meeting with the government." Fiadjoe v. Attorney General, 411 F.3d 135, 159 (3d Cir. 2005). Here, however, Mr. Polat failed to mention the arrests in two different interviews, and his explanations for not mentioning them were dubious. Moreover, the fact of his arrests was not a minor point, but rather a central element of Mr. Polat's claim for asylum. Mulanga v. Ashcroft, 349 F.3d 123, 137 (3d Cir. 2003) (noting that "*immaterial* discrepancies between airport interviews and subsequent testimony should not be used to make adverse credibility determinations") (emphasis added). It was therefore reasonable for the IJ to consider this omission in deciding whether Mr. Polat was credible.

As for the arrest warrant, Mr. Polat argues that the IJ erred in admitting the consular report because its weak probative value was outweighed by its prejudicial effect. As the government notes, the IJ provided Mr. Polat several opportunities to investigate the warrant and provide evidence of its reliability, as well as to determine whether Mr. Polat's confidentiality had been violated as he claimed, but Mr. Polat was unable to do so. (See, e.g., JA 120-27.) Moreover, the IJ recognized that the memo was not definitive, noting that it was hearsay. (JA 41.) In discrediting the arrest warrant, the IJ did not rely solely on the memo. She noted that Mr. Polat had not explained why it was addressed to

6

the "Birth Department," and also considered the fact that Mr. Polat was at home on several occasions after receiving the arrest warrant, but was never arrested.

In combination, these points provide substantial evidence in support of the IJ's decision. We therefore deny the Petition for Review.

———