

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-20-2005

# Durasevic v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2835

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Durasevic v. Atty Gen USA" (2005). *2005 Decisions*. Paper 376.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/376

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-2835
_____

LJINDON DURASEVIC,
                            Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                            Respondent

_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A95-144-753)

_____

Submitted Under Third Circuit LAR 34.1(a)
September 29, 2005

_____

Before: RENDELL, FUENTES and WEIS, Circuit Judges.

(Filed: October 20, 2005 )

_____

OPINION OF THE COURT

_____

RENDELL, Circuit Judge.

    Mr. Ljindon Durasevic petitions for review of a decision by the Board of

Immigration Appeals ("BIA") denying Durasevic's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). In so ruling, the BIA adopted and affirmed the decision of the Immigration Judge ("IJ"). The BIA's jurisdiction arose under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15, which grants it appellate jurisdiction over immigration judges' decisions in removal proceedings. We have jurisdiction under 8 U.S.C. § 1252. Inasmuch as we find that substantial evidence in the record supports the findings of both the IJ and the BIA, we will deny Durasevic's petition for review.

## I. FACTS AND PROCEDURAL HISTORY

Mr. Durasevic, a native of Montenegro and an ethnic Albanian, states that he felt discrimination as an ethnic Albanian from a young age when he and other Albanian children were not allowed to speak Albanian among themselves and were otherwise treated as second-class citizens. Mr. Durasevic states that during the war in Kosovo, he and his family gave aid to Kosovar refugees and the Kosovo Liberation Army ("KLA"), providing food, clothes, and shelter in their home, and escorting them across the border to Albania.

Durasevic states that during 1998 and 1999 Serbian officers and paramilitary units came to his house on several occasions searching for weapons and material that would link his family to the KLA. While the Serbian soldiers never found anything, they violently assaulted Durasevic and his family, and threatened to kill them all. In 1998,

2

Durasevic refused to join the Serbian army, believing that he would be sent to fight against fellow Albanians in the war in Kosovo. Durasevic states that during that time he was stopped and attacked on the streets on a daily basis. He attempted to leave Montenegro, but was unable to do so because he did not have the requisite travel documents.

Durasevic states that, after NATO troops forced the Serbian army out of Kosovo, much of the Serbian army crossed into Montenegro to punish the Albanian population there for providing aid to the KLA and to prevent Montenegro from breaking away.

In a statement in support of his application for asylum, Durasevic states that a Serbian paramilitary unit broke into his house on January 11, 2000.[1] The soldiers put him and his family against the wall and searched their house for weapons. Unable to find any weapons, the soldiers screamed at Durasevic and his family to tell them where the weapons were hidden and about their involvement with the KLA. One of the officers hit Mr. Druasevic's father in the head with the back of his rifle, causing him to fall bleeding to the floor. When Durasevic moved to help his father, he was struck on the head and knocked unconscious. He awoke the next day with a bandage around his head.

Durasevic testified that a draft notice was delivered to his father. His father did not accept the notice, informing the officials who delivered it that Durasevic was not at

---

[1]As discussed *infra*, Durasevic testified regarding the date of this event variously as "in November" (A100), January 11, 2000 (A101), and October 19, 2000 (A101).

home. His father told Durasevic to flee before he could be forced into the army and possibly shot. Aware that two fellow Albanians from his region had been killed only weeks after being forcefully drafted into the army, Mr. Durasevcic decided to flee Montenegro as soon as he could obtain the necessary paperwork.

After obtaining travel documents, Durasevic arrived in the United States on or about December 30, 2000, entering the country from Canada at a point near Buffalo, New York. On July 18, 2001, Durasevic filed an application for political asylum. On August 24, 2001, the Immigration and Naturalization Services ("INS")[2] commenced removal proceedings against Durasevic, charging that he was removable under INA § 212(a)(6)(A))i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled by an immigration officer. On June 22, 2003, an immigration judge denied Durasevic's application for political asylum, withholding of removal, and relief under CAT. On June 3, 2004, the BIA affirmed the decision.

Durasevic states that, if he returns to Montenegro, he will be immediately arrested and tried as a draft evader, and that he might be killed by the Serbian army without trial. He petitions for review.

## II. SCOPE AND STANDARD OF REVIEW

Where the BIA issues a decision on the merits and not simply a summary

---

[2]The INS no longer exists as an independent agency within the Department of Justice. Its functions have been transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 441, 116 Stat. 2135, 2192.

4

affirmance, we review the decision of the BIA, rather than that of the IJ. *Li v. Attorney General*, 400 F.3d 157, 162 (3d Cir. 2005). Where the BIA affirms the IJ's decision without opinion, we review the IJ's decision. *Partyka v. Attorney General*, 417 F.3d 408, 411 (3d Cir. 2005). As here, where the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we review decisions of both the IJ and the BIA. *He Chun Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004). Where the BIA substantially relies on an IJ's credibility determination, we must look to both decisions to review the administrative decision meaningfully. *Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004).

The BIA's decision in this case relied upon the findings made by the IJ. The BIA did not conduct a *de novo* review of the record to arrive independently at its conclusions. Therefore, inasmuch as the BIA deferred to the IJ's findings and adopted the reasons the IJ set forth for its determination, we will review both determinations. *See He Chun Chen*, 376 F.3d at 222.

We review the BIA's legal determinations *de novo*, subject to established principles of deference. *See Smriko v. Ashcroft*, 387 F.3d 279, 282 (3d Cir. 2004). Determinations that an alien experienced persecution or has a "well-founded fear of persecution" are findings of fact and are reviewed under the substantial evidence standard. *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001). Factual findings must be upheld if they are "supported by reasonable, substantial, and probative evidence on the

5

record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).

Adverse credibility determinations are also reviewed for substantial evidence. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). Adverse credibility determinations based purely on speculation or conjecture are reversible. *Id.* To support an adverse credibility finding, discrepancies in an alien's testimony must involve the "heart of the asylum claim." *Id.*

### III. DISCUSSION

### A. The Immigration Court's Decision

In her oral decision, the immigration judge reviewed Durasevic's asylum application and testimony. (A50-53.) The immigration judge found, after reviewing the written submissions, testimony, and background documentation submitted in support of Durasevic's application, that he had not established that he has a "well-founded fear" of future persecution if he were to be returned to Montenegro. (A53.) The IJ concluded that Durasevic had not "presented a believable, consistent and sufficiently detailed claim as to provide a plausible and coherent account of persecution within the meaning of the Act." (A53.) The IJ noted that "the meager testimony provided by this respondent is somewhat contradictory from his written submission and he's offered no plausible explanations for the major discrepancies." (A53.) In particular, the immigration judge noted that Durasevic had testified that his house had been ransacked for weapons and he and his father were attacked on October, 19 2000, but he had stated in his asylum application that

6

this episode had occurred on January 11, 2000. (A53-54.) The immigration judge noted that Durasevic had offered no explanation for this discrepancy beyond saying that he was nervous and had made a mistake. (A54.) The immigration judge concluded that Durasevic had presented "merely a whisper of a claim." (Trans. of Oral Decision at A54.)

The immigration judge also noted that the country conditions report generated by the Department of State did not support Durasevic's claims, finding that conditions in Montenegro had stabilized and that Albanians "are a functioning intrical [sic] part of this society." (Trans. of Oral Decision at A54.) The IJ concluded that the totality of Durasevic's presentation did not support a grant of political asylum in the United States; that consequently he had failed to meet the higher standard of withholding of removal; and that he had not articulated any basis nor presented any evidence supporting relief under the Convention Against Torture. (A54-55.) The BIA adopted and affirmed the IJ's decision in a single paragraph opinion. (A02.)

## B. Eligibility for Asylum

The Attorney General has discretion to grant asylum to an alien who is a "refugee." 8 U.S.C. § 1158(a). An alien qualifies as a refugee if he or she is "unable or unwilling" to return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). A showing of past persecution

7

gives rise to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1).

Durasevic's petition for review argues that we should reverse (1) the finding that Durasevic has not established a well-founded fear of persecution and (2) the finding that Durasevic has not met his burden for establishing a claim for alternative relief based on withholding of removal. Durasevic concedes that these issues are reviewed under the substantial evidence standard. (Petitioner's Brief at 8.)

Durasevic argues that the IJ's credibility determination was based on speculation, placed too much emphasis on inconsistencies between Durasevic's affidavit and subsequent testimony, and lacked specific and cogent reasons for its finding. (Pet. Br. at 10-11.) An adverse credibility determination based on speculation or conjecture, rather than on evidence in the record is reversible. *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003) (en banc). An IJ must support her adverse credibility findings with "specific, cogent" reasons. *Id*. The immigration judge must not base an adverse credibility finding solely on an inconsistency relating to a minor or tertiary matter which does not go to the heart of the petitioner's claim. *See Zubeda v. Ashcroft*, 333 F.3d 463, 476 (3d Cir. 2003) (cautioning against placing too much weight on inconsistencies between an asylum affidavit and subsequent testimony at a hearing); *Campos-Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir. 1999) ("[I]nconsistencies of less than substantial importance for which a plausible explanation is offered cannot form the sole basis for an adverse credibility

8

finding." (internal quotations omitted)).

Here, however, the immigration judge's adverse credibility finding was not based on a single, unimportant inconsistency, but rather on an inconsistency as to the chronology of the very events which Durasevic put forward as supporting his asylum claim. The inconsistency touched the "heart" of his claim for asylum. The IJ's adverse credibility determination was a reasonable interpretation of evidence presented and we will not disturb it under the substantial evidence standard of review.

The immigration judge's credibility finding was supplemented with a finding that Durasevic's had presented merely a "whisper of a claim" and that "nothing substantive has been offered to support his claim of persecution." (Trans. Oral Decision at A54.) Nothing in the record compels a contrary conclusion.

Durasevic also argues that the immigration court erred in finding that the country conditions did not support his claim. (Pet. Br. at 12-13.) He points to statements in the country report that police beat, abused, and arbitrarily arrested and detained citizens. (Pet. Br. at 13.) However, the country report also stated that Montenegro's government generally respected the human rights of its citizens and that, though discrimination against ethnic minorities continued to be a problem, it had decreased. (A168-69.) The report also stated that there were no reports of arbitrary or unlawful deprivations of life committed by the Republic Government or its agents. (A169.) Under substantial evidence review, we cannot conclude the immigration judge's finding was unreasonable

in light of the evidence provided.

Durasevic argues further that the IJ erred in relying too heavily on the State Department's country report. (Pet. Br. at 13-14.) However, we find no indication that the immigration judge placed undue emphasis on the country report. Rather, the IJ appears to have considered the country report as one factor in its determination, along with the discrepancy in Durasevic's statements and the "meager" testimony and other evidence presented by him.

The record also includes a letter from the Consul General of the United States Embassy in Belgrade. (A112.) The Consul General observes that the Albanian community has a large degree of cultural autonomy and that a significant proportion of judges, police, and other officials are of Albanian ethnicity. The Consul General also notes that Montenegro has a high unemployment rate and that ethnic Albanians engage in a "persistent pattern" of "chain migration" to the United States. Fraudulent documents are sold openly in marketplaces and traffickers coach migrants to ask for asylum.

The determinations made by the immigration judge in this case– as in many immigration cases– are not easy. Were we to review the immigration court's decision *de novo*, we might arrive at a different conclusion. However, we find that the immigration judge's conclusion that Durasevic does not meet the requirements for a grant of asylum is a reasonable interpretation of evidence presented and we will not disturb it under the substantial evidence standard of review.

10

## C.  Eligibility for Withholding of Removal

The Attorney General must grant withholding of removal to an alien who demonstrates a "clear probability" that, upon repatriation, his or her life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion.  8 U.S.C. § 1231(b)(3); *Chen v. Ashcroft*, 376 F.3d 215, 223 (3d Cir. 2004).  Because this is a higher standard than that for asylum, an applicant who does not qualify for asylum also does not qualify for withholding of removal.  *Id.*  Since Durasevic failed in his claim for asylum, he also fails in his claim for withholding of removal.

## D.  Relief Under the CAT

To qualify for relief under the CAT, an alien must demonstrate that it is more likely than not that he or she would be tortured if returned to the proposed country of removal.  8 C.F.R. § 1208.16.  The IJ found that Durasevic "has not articulated any basis nor presented any evidence for this Court to conclude that it would be "more likely than not" that if he were removed to Montenegro he would be tortured in Montenegro." (Trans. Oral Decision at A55.)  No evidence in the record compels us to revisit the IJ's conclusion.

## III.  Conclusion

For the foregoing reasons, we will deny Durasevic's petition for review of the BIA's order.

11