

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-11-2005

# Partyka v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 04-2804

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Partyka v. Atty Gen USA" (2005). *2005 Decisions*. Paper 614.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/614

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-2804
_____

MAREK PARTYKA,
                    Petitioner

v.

* ATTORNEY GENERAL
OF THE UNITED STATES,
                    Respondent

*(Pursuant to F.R.A.P. 43(c))

_____
On Petition for review of an Order of the Board of
Immigration Appeals
INS No. A46-389-774

_____

Argued: March 30, 2005

Before: ALITO, SMITH, and ROSENN <u>Circuit</u> <u>Judges</u>

(Filed: August 11, 2005 )

Joseph C. Hohenstein (Argued)
James J. Orlow
Orlow & Orlow
6th & Chestnut Streets
Philadelphia, PA 19106

   Counsel for Petitioner

Bryan S. Beier (Argued)
Linda S. Wernery
Jocelyn L. Wright
William C. Peachey
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

   Counsel for Respondent

_____

OPINION OF THE COURT
_____

ROSENN, Circuit Judge.

  The conviction of Marek Partyka ("Partyka" or "Petitioner") for violating a New Jersey criminal statute by assaulting a local law enforcement officer and the ensuing order of removal require us to wade into the amorphous

morass of moral turpitude law. As a result of an altercation between Petitioner, then aged twenty, and his father, local police and their K-9 dog responded to a call for assistance. A scuffle soon ensued between the officers and Partyka as he attempted to free himself from the chomping jaws of the police dog. Partyka pled guilty to one count of third degree aggravated assault under the New Jersey statute and the New Jersey Superior Court imposed a sentence of ninety days' house arrest and two years' probation.

The Immigration and Naturalization Service ("INS") instituted deportation proceedings for Petitioner's removal to Poland on the ground that his conviction for causing bodily injury to a law enforcement officer involved moral turpitude under § 237(a)(2)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(i). The Immigration Judge ("IJ") concluded that Partyka's crime involved moral turpitude and that he was removable. The Board of Immigration Appeals ("BIA") affirmed without opinion. Partyka timely filed a petition for review in this Court. We grant the petition for review and will vacate the BIA's order of removal.

I.

Partyka, a native and citizen of Poland, was admitted to the United States as a lawful permanent resident in June 1999, when he was eighteen years-old. Less than two years later, a dispute erupted between Partyka and his father at his father's home in New Jersey, and the police were summoned. When the officers arrived, Partyka's father reported that his son had

3

been drinking and had choked him. The officers observed Partyka pacing on an outdoor, second-floor landing of his father's apartment building, with a cigarette in one hand, and his other hand in his pocket. One officer thought Partyka was hiding something in his concealed hand, and ordered him to remove his hand from his pocket and to descend the staircase to the ground floor. Partyka allegedly became enraged, threw his cigarette at the officer, and refused to remove his hand from his pocket or to descend the staircase.

According to the police reports, Partyka took no physical action toward the police until the K-9 police unit arrived. At that time, Partyka, having been informed that he was under arrest, came down the steps toward the police officers and kicked at the K-9 police dog accompanying the arresting officers. The dog attacked him, biting him repeatedly on his legs, head, and face. The dog seized Partyka on the right calf and the left leg, inflicting multiple lacerations and punctures to both legs. The officers reported that, before they gained control of Partyka, he spat at, wrestled with, kicked, and punched them. Upon completion of the arrest, Partyka was committed to the local hospital for his injuries from the dog bites. He was diagnosed with "traumatic arthrotomy, left knee, secondary to dog bite; multiple lacerations and punctures of the right and left lower extremities secondary to dog bites." He remained hospitalized for three days. The police dog received veterinary attention. There is no report of the officers having received medical care.

In May 2001, Partyka was charged with, inter alia, two

4

counts of aggravated assault on a law enforcement officer in the third degree, in violation of N.J. Stat. Ann. § 2C:12-1b(5)(a). He pled guilty to one count of third degree aggravated assault on a law enforcement officer, and the other charges were dropped. The Superior Court entered a judgment of conviction and sentenced Partyka to ninety days' house arrest and two years' probation.

In April 2002, the INS[1] initiated removal proceedings against Partyka, charging him with being removable under § 237(a)(2)(A)(i) of the INA, 8 U.S.C. § 1227(a)(2)(A)(i), as an alien having been convicted of a crime involving moral turpitude within five years of admission for which a sentence of one year or longer may be imposed.

Partyka moved to terminate the removal proceedings, arguing that he was not convicted of a crime involving moral turpitude. The IJ denied the motion, and applying Board precedents, explained in a written decision that, "aggravated assault against a police officer, which results in bodily injury, and which involves knowledge . . . that . . . force is directed to the officer who is performing an official duty, constitutes a crime involving moral turpitude." IJ Dec. & Order at 2-3

---

[1] On March 1, 2003, the INS's functions were transferred to the newly-formed Bureau of Immigration and Customs Enforcement, within the United States Department of Homeland Security. See Knapik v. Ashcroft, 384 F.3d 84, 86 n.2 (3d Cir. 2004) (citing Homeland Security Act of 2002, Pub. L. 107-296, §§ 441, 451, 471, 116 Stat. 2135 (2002)).

(citing Matter of Danesh, 19 I. & N. Dec. 669, 673 (BIA 1988)).

## II.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a) to review the BIA's final order of removal. Our review of the BIA's legal determinations is de novo. See Smriko v. Ashcroft, 387 F.3d 279, 282 (3d Cir. 2004). Because the BIA in Partyka's case affirmed the IJ's decision without opinion, we review the IJ's decision. See Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir. 2003) (en banc). Whether an IJ's determination is entitled to Chevron deference, Chevron, U.S.A. v. National Res. Def. Council, Inc, 467 U.S. 837 (1984), when the BIA affirms without opinion remains an open question in this circuit. See Smriko, 387 F.3d at 289 n.6; Coraggioso v. Ashcroft, 355 F.3d 730, 733 (3d Cir. 2004). We need not answer this question now, however, because we owe no deference to the IJ's interpretation of a state criminal statute. See Knapik v. Ashcroft, 384 F.3d 84, 88 (3d Cir. 2004) (explaining that we accord Chevron deference to the BIA's determination that a particular crime involves moral turpitude but we accord no deference to the BIA's determination of "the elements . . . of a particular criminal statute deemed to implicate moral turpitude"). We conclude that the IJ erroneously interpreted the New Jersey aggravated assault statute.

## III.

Under the INA, an alien is deportable if he:

>   (I) is convicted of a crime
>   involving moral turpitude
>   committed within five years . . .
>   after the date of admission, and
>
>   (II) is convicted of a crime
>   for which a sentence of one year
>   or longer may be imposed . . . .

8 U.S.C. § 1227(a)(2)(A)(i).

Partyka was convicted of a crime within five years of his admission to this country, and although the New Jersey Superior Court imposed a light sentence of ninety days' house arrest and two years' probation, the crime carried a potential sentence of one year or longer. Therefore, he is deportable if his crime "involves moral turpitude."

Whether an alien's crime involves moral turpitude is determined by the criminal statute and the record of conviction, not the alien's conduct. Knapik, 384 F.3d at 88, 90-91; De Leon-Reynoso v. Ashcroft, 293 F.3d 633, 635 (3d Cir. 2002). Under this categorical approach, we read the applicable statute to ascertain the least culpable conduct necessary to sustain a conviction under the statute. Hamdan v. INS, 98 F.3d 183, 189 (5th Cir. 1996); Matter of Marchena, 12 I. & N. Dec. 355, 357 (BIA 1967). As a general rule, a criminal statute defines a crime involving "moral turpitude only if all of the conduct it prohibits is turpitudinous."

7

Smalley v. Ashcroft, 354 F.3d 332, 336 (5th Cir. 2003) (quoting Hamdan, 98 F.3d at 187); see also Matter of C–, 5 I. & N. Dec. 65, 69-70 (BIA 1953). Where a statute covers both turpitudinous and non-turpitudinous acts, however, it is "divisible," and we then look to the record of conviction to determine whether the alien was convicted under that part of the statute defining a crime involving moral turpitude. See, e.g., Padilla v. Gonzales, 397 F.3d 1016, 1019 (7th Cir. 2005); Chanmouny v. Ashcroft, 376 F.3d 810, 813 (8th Cir. 2004); Hamdan, 98 F.3d at 187; Matter of Ajami, 22 I. & N. Dec. 949, 950 (BIA 1999).

Thus, we first focus on the elements of the New Jersey statute. Then, we examine the meaning of "moral turpitude" under BIA precedents and federal case law. Because we conclude that moral turpitude does not inhere in all violations of the New Jersey statute, we turn to Partyka's record of conviction to determine whether he was convicted under a subsection involving moral turpitude.

## A. The New Jersey Statute

The New Jersey aggravated assault statute effective at the time of Partyka's arrest and indictment provided that a person is guilty of aggravated assault for committing a

> simple assault as defined in
> subsection a. (1), (2) or (3) of this
> section upon:
>
> (a) Any law enforcement

8

> officer acting in the performance
> of his duties while in uniform or
> exhibiting evidence of his
> authority . . . .

N.J. Stat. Ann. § 2C:12-1b(5)(a) (West 1995 & Supp. 2004), amended by 2001 N.J. Sess. Law Serv. ch. 215, § 1.[2] Under subsection a, one is guilty of simple assault if one:

> (1) Attempts to cause or
> purposely, knowingly or recklessly
> causes bodily injury to another; or

> (2) Negligently causes bodily
> injury to another with a deadly weapon;
> or

---

[2] Effective August 20, 2001, seven days before Partyka pled guilty to this crime, the New Jersey assault statute was amended to include another ground for aggravated assault: simple assault on a law enforcement officer "because of his status as a law enforcement officer." N.J. Stat. Ann. § 2C:12-1b(5)(a) (West Supp. 2004). The IJ applied the old version to Partyka's case. Contrary to Partyka's assertions, both versions of the statute require knowledge that the person assaulted is a police officer. Thus, the statutory amendment has no impact on whether the crime involves moral turpitude. See discussion infra p. 11.

(3) Attempts by physical menace
to put another in fear of imminent serious
bodily injury.

Id. § 2C:12-1a(1)-(3).

Aggravated assault on a law enforcement officer is a crime of the third degree if the officer suffers bodily injury. Id. § 2C:12-1b(11). Partyka pled guilty to aggravated assault in the third degree, and thus he does not contest that his assault on a law enforcement officer resulted in bodily injury. Rather, he contends that the New Jersey assault statute permits convictions in the absence of an intent to cause bodily injury, and therefore, his conviction does not evince moral turpitude. The IJ rejected Partyka's contention, and concluded that "all the offenses" defined in the New Jersey assault statute "required at a minimum an intent to cause bodily injury." IJ Dec. & Order at 3 n.2. The IJ, however, misconstrued the statute, as it plainly allows convictions for recklessly or negligently causing bodily injury.

The first element of aggravated assault under the New Jersey statute is "simple assault as defined in subsection a(1), (2), or (3) of this section." N.J. Stat. Ann. § 2C:12-1b(5). The minimum culpable conduct required to commit simple assault is the negligent infliction of bodily injury with a

10

deadly weapon under subsection a(2).[3] A person acts negligently, according to the New Jersey criminal code, when "he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct." Id. § 2C:2-2b(4). The risk involved "must be of such a nature and degree that the actor's failure to perceive it," considering the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would have exercised. Id. We need not concern ourselves with the statutory definition of a deadly weapon because Partyka had no weapon in his possession.

Based on the statutory language of § 2C:12-1b(5)(a) both before and after Partyka pled guilty to this crime in August 2001, it is apparent that the State was required to prove that Partyka knew the person he was assaulting was a police officer. See, e.g., United States v. Rebelo, 358 F. Supp. 2d 400, 418-19 (D.N.J. 2005); State v. Green, 724 A.2d 254, 262 & n.1 (N.J. Super. Ct. App. Div. 1999). Therefore, we must consider whether the negligent infliction of bodily injury on someone known to the defendant to be a law enforcement officer is a crime involving moral turpitude.

B. Moral Turpitude

---

[3] The attempts described in subsection a(1) and (3) require specific intent. See, e.g., United States v. Rebelo, 358 F. Supp. 2d 400, 416 (D.N.J. 2005) ("It is blackletter law that criminal attempt requires specific intent.") (citing N.J. Stat. Ann. § 2C:5-1)).

11

The INA does not define "moral turpitude," and, as this Court has observed, the phrase "defies a precise definition." De Leon-Reynoso, 293 F.3d at 635. Black's Law Dictionary sweepingly defines moral turpitude as "[c]onduct that is contrary to justice, honesty, or morality." BLACK'S LAW DICTIONARY 1030 (8th ed. 2004); see Smriko, 387 F.3d at 283; De Leon-Reynoso, 293 F.3d at 635-36. The BIA is more specific and defines "moral turpitude as conduct that is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed other persons, either individually or to society in general." Knapik, 384 F.3d at 89 (citing Matter of Franklin, 20 I. & N. Dec. 867, 868 (BIA 1994), and Matter of Danesh, 19 I. & N. Dec. at 670).

A longstanding test employed by the BIA to determine the existence of moral turpitude, which we find persuasive in a removal proceeding, asks "whether the act is accompanied by a vicious motive or a corrupt mind." Matter of Franklin, 20 I. & N. Dec. at 868 (citations omitted). Accordingly, the Board has repeatedly "held that 'evil intent' is a requisite element for a crime involving moral turpitude." Matter of Khourn, 21 I. & N. Dec. 1041, 1046 (BIA 1997); Matter of Flores, 17 I. & N. Dec. 225, 227 (BIA 1980) ("An evil or malicious intent is said to be the essence of moral turpitude."); Matter of Abreu-Semino, 12 I. & N. Dec. 775, 777 (BIA 1968) ("moral turpitude normally inheres in the intent"); Matter of P–, 2 I. & N. Dec. 117, 121 (BIA 1944) ("One of the criteria adopted to ascertain whether a particular crime involves moral turpitude is that it be accompanied by a vicious motive or corrupt mind. 'It is in the intent that moral turpitude inheres.'") (quoting US ex rel. Meyer v. Day, 54

12

F.2d 336 (2d Cir. 1931)).[4]  The Court of Appeals for the Second Circuit has given the subject considerable thought and has concluded that "corrupt scienter is the touchstone of moral turpitude."  Michel v. INS, 206 F.3d 253, 263 (2d Cir. 2000); see also, Chanmouny, 376 F.3d at 814-15; Hamdan, 98 F.3d at 186.[5]

In recent years, however, the BIA has found moral turpitude to inhere in serious crimes committed recklessly, i.e., with a conscious disregard of a substantial and unjustifiable risk that serious injury or death would follow. See Matter of Medina, 15 I. & N. Dec. 611, 614 (BIA 1976) (concluding that moral turpitude inheres in aggravated assault with a deadly weapon even if one acts not with intent, but with recklessness, because the "definition of recklessness requires an actual awareness of the risk created by the criminal violator's action").   Recently, this Court has expressed its approval of this approach.  See Knapik, 384 F.3d at 89-90 (affirming the BIA's decision that first degree reckless endangerment as defined by the N.Y. Penal Law involves moral turpitude, where the criminal statute requires the actor to "consciously disregard" the "grave risk of death to

_____

   [4]  Of significant importance is the BIA's recognition that a "state's determination as to what crimes it deems morally turpitudinous is not conclusive for federal immigration purposes."  Matter of Medina, 15 I. & N. Dec. 611, 614 (BIA 1976).

   [5]  But see Mei v. Ashcroft, 393 F.3d 737, 740 (7th Cir. 2004).

13

another person" created by the actor) (internal quotation marks omitted).

Under either standard, the hallmark of moral turpitude is a reprehensible act committed with an appreciable level of consciousness or deliberation. The negligent infliction of bodily injury lacks this essential culpability requirement. By definition, a negligent assault is unintentional, unwitting, and committed without contemplation of the risk of injury involved. We can readily imagine negligent assaults which do not connote moral turpitude. For just one example, a licensed firearm owner could be target-practicing in an authorized area, while uniformed police officers conduct an investigation nearby. The firearm owner might handle the firearm carelessly for a moment, discharging a bullet in the direction of the officers, and causing bodily injury to an officer. This event could lead to a conviction for negligent assault with a deadly weapon on a law enforcement officer, in violation of N.J. Stat. Ann. § 2C:12-1b(5)(a). However, there is nothing "inherently base, vile, or depraved" about such an act, particularly because the actor never intended to assault the officer, nor consciously disregarded a substantial risk of injury to the officer. See Knapik, 384 F.3d at 90 (observing that "the BIA limits moral turpitude to crimes [involving specific intent or crimes] in which a defendant consciously disregards a substantial risk of serious harm or death to another").

Therefore, we reject the Attorney General's contention that moral turpitude inheres in the New Jersey aggravated assault statute in all instances where the defendant knows that

14

the person he is assaulting is a law enforcement officer and causes bodily injury. The aggravating factors, standing alone, cannot give rise to moral turpitude. Two federal immigration cases involving assaults on law enforcement officers, often cited by the BIA, illustrate this point. See United States ex rel. Zaffarano v. Corsi, 63 F.2d 757 (2d Cir. 1933); Ciambelli ex rel. Maranci v. Johnson, 12 F.2d 465 (D. Mass. 1926).

In Zaffarano, the alien was convicted of second degree assault under New York law, but his record of conviction failed to specify the elements of his crime. A panel of the Second Circuit Court of Appeals consisting of the venerable Learned Hand, Augustus N. Hand, and Judge Swan, vacated the order of removal, observing that not all second degree assaults involve moral turpitude. An assault lacking such depravity, the court explained, is committed by a person "to prevent or resist execution of any lawful process or mandate of any court or officer, or the lawful apprehension or detention of himself or of any other person." Id. at 758. Although recognizing that assaulting a law enforcement officer during the course of his duties is more serious than assaulting a private person, the court concluded that there is no moral turpitude inherent in "putting forth the mildest form of intentional resistance against an officer attempting to . . . apprehend or detain the accused or another." Id. In this scenario, the assault is a byproduct of an attempt to evade arrest, not the result of a deliberate attempt to injure the officer. Without venturing an opinion on whether moral turpitude inheres in resisting arrest, we think that the essence of Zaffarano's holding, that the actor's state of mind is key to a finding of moral turpitude, remains sound.

15

Similarly, this focus on state of mind guided the federal court's holding in Ciambelli that an alien's assault on a police officer during the course of his official duties, even when armed with a dangerous weapon, was not a crime involving moral turpitude. In that case, the assault occurred when the officer interceded in a barroom brawl. Ciambelli, 12 F.2d at 465. It was apparent from the record of conviction that the alien did not use the weapon on the officer, but the court's holding turned on the alien's mind state. It explained that assault committed "in the heat of anger," such as during a fight, lacks "such inherent baseness or depravity as to" evince moral turpitude. Id. at 466. The court recognized, however, that if the alien had "deliberately assaulted an officer of the law with a dangerous weapon and with felonious intent, or for the purpose of interfering with the officer in the performance of his duty," then his crime might have involved moral turpitude. Id. (emphasis added).

The BIA has consistently adhered to the premise of Zaffarano and Ciambelli by taking into account the crime's culpability requirements in determining whether it involves moral turpitude. See, e.g., Matter of Torres-Varela, 23 I. & N. Dec. 78 (BIA 2001) (interim decision). The BIA has seldom found moral turpitude to inhere in an assault that lacks specific intent, and in the absence of specific intent, it has found depravity only if there is deliberate conduct and an aggravating factor. Compare Matter of Fualaau, 21 I. & N. Dec. 475, 478 (BIA 1996) (reckless assault without an aggravating dimension lacks moral turpitude), with Matter of Medina, 15 I. & N. Dec. at 614 (reckless assault with a deadly weapon involves moral turpitude).

16

In its one published decision involving negligent assault, the BIA found no moral turpitude. In Matter of Perez-Contreras, the Board declared that an assault which causes "bodily harm accompanied by substantial pain" and "considerable suffering," lacks moral turpitude when committed "with criminal negligence." Matter of Perez-Contreras, 20 I. & N. Dec. 615, 617 (BIA 1992) (quoting Wash. Rev. Code § 9A.36.031(1)(f)). Although there were no aggravating factors under the statute at issue there, the Board's decision focused on the absence of a scienter requirement. It explained: "Where knowing or intentional conduct is an element of an offense, we have found moral turpitude to be present. However, where the required mens rea may not be determined from the statute, moral turpitude does not inhere." Id. at 618 (citing Matter of Danesh, 19 I. & N. Dec. 669).

The Attorney General contends that Matter of Danesh is directly on point, and urges us to apply it here to affirm the BIA's order of removal. In that case, the alien was convicted for aggravated assault under Texas law, for, as the BIA described the crime, "having knowingly and intentionally caused bodily injury to a peace officer who was in the lawful discharge of his official duty when [the alien] knew the person assaulted was a peace officer." 19 I. & N. Dec. at 670 (emphasis added). The Board concluded that this aggravated assault involved moral turpitude. Notably, it acknowledged that the first element of aggravated assault under the Texas statute is simple assault, which requires either the intentional, knowing, or reckless infliction of bodily injury. Id. at 673 n.1 (citing Tex. Penal Code § 22.02(a)(2)(A)). Subsequently, in its decision in Matter of Perez-Contreras, the BIA cited Matter of Danesh for the proposition that assault involves moral turpitude only if the statute requires scienter. See Matter of Perez-Contreras, 20 I. & N. Dec. at 618. Thus, a

17

careful reading of Matter of Danesh militates against the Attorney General's contention that moral turpitude inheres in causing bodily injury to a law enforcement officer with a deadly weapon as a result of mere negligence.

For the foregoing reasons, we conclude that moral turpitude does not inhere in the least culpable conduct under N.J. Stat. Ann. § 2C:12-1b(5)(a).[6] However, if we can determine from Partyka's record of conviction that he was convicted for violating a subsection of the statute requiring intentional, knowing, or reckless infliction of bodily injury, then Matter of Danesh would apply, and we would agree with the IJ's finding of moral turpitude.

C. Partyka's Record of Conviction

Under the general rule governing moral turpitude determinations, "absent specific evidence to the contrary in the record of conviction, the statute must be read at the minimum criminal conduct necessary to sustain a conviction under the statute." Hamdan, 98 F.3d at 189 (citing United States ex rel. Guarino v. Uhl, 107 F.2d 399 (2d Cir. 1939)). The record of conviction includes "the indictment, plea, verdict, and sentence." Chanmouny, 376 F.3d at 812 (citing Matter of Ajami, 22 I. & N. Dec. at 950).

The administrative record before us contains the Indictment, Judgment of Conviction, and Statement of Reasons and Sentence. Partyka's plea agreement is not part of the record. The Indictment charges that Partyka "did

---

[6] Accordingly, we disagree with the court in Rebelo, insofar as it concluded that the least culpable conduct under N. J. Stat. Ann. § 2C:12-1b(5)(a) involves moral turpitude. See Rebelo, 358 F. Supp. 2d at 417-21.

18

commit a simple assault as defined in [N.J. Stat. Ann. §] 2C:12-1a causing bodily injury to" two law enforcement officers while they were "acting in the performance of [their] duties, while in uniform or exhibiting evidence of [their] authority, contrary to the provisions of the N.J.S. 2C:12-1b(5)." It does not specify under which subsection of the simple assault statute Partyka was charged. Likewise, the Judgment of Conviction and Statement of Reasons and Sentence do not reveal the level of criminal culpability involved.

Therefore, we must decide whether Partyka's crime involves moral turpitude based on the least culpable conduct required to secure a conviction under the New Jersey statute. As we have concluded, supra § III.A, the least culpable conduct under the statute is the negligent infliction of bodily injury with a deadly weapon. We hold that negligently inflicted bodily injury lacks the inherent baseness or depravity that evinces moral turpitude, see supra § III.B, and therefore, Partyka was not convicted of such a crime.

IV.

Accordingly, Partyka is not deportable, not having committed a crime involving moral turpitude under § 237(a)(2)(A)(i) of the INA, 8 U.S.C. § 1227(a)(2)(A)(i). His petition for review is granted and the BIA's order of removal will be vacated.

19

ALITO, Circuit Judge, concurring in the judgment in part and dissenting in part:

I concur in the judgment insofar as it grants the petition for review. I agree with the majority that the Immigration Judge misread the New Jersey assault statute when he said that "all the offenses [covered by that statute] require[] at a minimum an intent to cause bodily injury." IJ Dec. & Order at 3 n.2. In fact, under the provision at issue here, N.J.S.A. § 2C:12-1(b)(5)(a), the minimum mens rea with respect to the infliction of bodily injury without the use of a deadly weapon is recklessness, and the minimum mens rea for the infliction of bodily injury with a deadly weapon is negligence. In light of the IJ's misinterpretation of the New Jersey statute, we should grant the petition for review and remand to the Board of Immigration Appeals so that the Board can apply its understanding of the concept of a crime of moral turpitude to the New Jersey statute as properly construed.

The majority sees no need for a remand because it is confident that the petitioner's offense was not a crime of moral turpitude under the BIA's interpretation of that concept. The majority interprets the BIA's decisions as generally holding that an assault cannot be a crime of moral turpitude unless the perpetrator has the "specific intent" to inflict bodily injury or at least acts recklessly with respect to the infliction of such injury. Maj. Op. at 12-14.

I do not rule out this interpretation of the BIA's decisions, but this reading is at least debatable. In <u>Matter of Danesh</u>, 19 I.& N. at 673 (emphasis added), the Board stated:

20

In the case before us the respondent was convicted of aggravated assault on a peace officer. Under Texas law that offense requires that the following elements be present: (1) the person assaulted must sustain bodily injury; (2) the accused must know that the person assaulted is a peace officer; and (3) the peace officer must be engaged in the lawful discharge of an official duty . . . . *[W]e conclude that an aggravated assault against a peace officer, which results in bodily harm to the victim and which involves knowledge by the offender that his force is directed to an officer who is performing an official duty, constitutes a crime that involves moral turpitude.*

This language suggests that, contrary to the majority's interpretation, the Board may think that the unintentional infliction of bodily injury upon a person known to be a police officer who is performing an official duty constitutes a crime of moral turpitude. Indeed, that is how the IJ in this case seems to have interpreted <u>Matter of Danesh</u>. The IJ wrote:

An aggravated assault against a police officer, which results in bodily injury, and which involves knowledge by the respondent that his force is directed to the officer who is performing an official duty, constitutes a crime involving moral turpitude. <u>See</u> <u>Matter of Danesh</u>, 19 I & N Dec. 669, 673 (BIA 1988) . . . .

21

App. 42-43.  The BIA affirmed the IJ's decision without opinion.  Therefore, I am afraid that the majority may be relying on a mistaken reading of the Board's decisions.  This approach is puzzling because the BIA is the final authority on the meaning of its own decisions.

For these reasons, while I concur in the judgment insofar as it grants the petition for review, I must dissent from the majority's unexplained refusal to remand to the BIA.