

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-30-2005

# Romano-Vairan v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3208

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Romano-Vairan v. Atty Gen USA" (2005). *2005 Decisions.* Paper 197.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/197

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3208

———

ANTONIO CASTO ROMANO-VARIAN,
                                        Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent.

———

On Petition for Review from
the Board of Immigration Appeals
BIA No: A79-701-603

———

Argued:  November 14, 2005

Before: ROTH, FUENTES, and BECKER, Circuit Judges.

(Opinion Filed November 30,  2005)


Thomas Moseley (ARGUED)
One Gateway Center, Suite 2600
Newark, NJ 07102

ATTORNEY FOR PETITIONER

1

Peter Keisler
Douglas Ginsburg
Margaret Jane Mahoney
Thomas Holzman (ARGUED)
United States Department of Justice
P.O. Box 340, Ben Franklin Station
Washington DC 20044

ATTORNEYS FOR RESPONDENT

————

OPINION OF THE COURT

————

FUENTES, Circuit Judge.

Petitioner Antonio Casto Romano-Varian ("Mr. Romano") challenges a decision of the Board of Immigration Appeals ("BIA") upholding the denial by an Immigration Judge ("IJ") of his application for cancellation of removal. The IJ found that Mr. Romano had not made the statutorily required showing of ten years of continuous physical presence in the United States. Because the BIA affirmed the IJ's decision without opinion, we review the decision of the IJ. *Partyka v. Attorney General*, 417 F.3d 408, 411 (3d Cir. 2005). We find that the IJ's determination as to continuous physical presence was not supported by substantial evidence. We therefore grant the petition and remand to the BIA for further proceedings consistent with this opinion.

## BACKGROUND

### I.

Mr. Romano was born in Mexico. He states that he immigrated illegally to the United States in 1989, and formed a relationship with a woman named Santa Canete shortly after his arrival. The couple now has three children, ages 12, 11, and 7, who were all born in New Jersey. Mr. Romano states that he has worked at Pierson Industries as a material handler since arriving in the United States, and that to hide his illegal immigrant status, he identified himself at Pierson as Heriberto Negrete from Puerto Rico.

On June 12, 2002, Mr. Romano was served with a Notice to Appear alleging that he had been in the United States illegally since 1989 and was subject to removal. At a hearing on September 24, 2002, Mr. Romano admitted the allegations, but submitted an application for cancellation of removal under 8 U.S.C. § 1229b. That statute provides for relief from removal where an non-permanent resident alien (1) has been present in the United States continuously for ten years; (2) has had "good moral character" during that period; (3) has no convictions for disqualifying crimes; and (4) has a spouse, parent, or child who is a U.S. citizen or lawful alien and for whom the applicant's removal would lead to "exceptional and extremely unusual hardship."[1] 8 U.S.C. § 1229b(b)(1).

---

[1] Because the IJ found that Mr. Romano had not established ten years continuous presence, she did not consider the other cancellation of removal factors. Mr. Romano asserts that he has no criminal record, and he has submitted a letter from his church stating that he is of "good moral character." Mr. Romano has also presented evidence that his son Edwin has acute anxiety disorder and significant dental problems, that his

The ten years continuous presence requirement stems from the date of Mr. Romano's receipt of the Notice to Appear. *See* 8 U.S.C. § 1229b(d)(1). Because Mr. Romano received the Notice on June 12, 2002, he was required to establish ten years of continuous presence since June 12, 1992. At the hearing on Mr. Romano's application, the Department of Homeland Security (DHS) declined to concede that the continuous presence requirement was satisfied. Mr. Romano submitted an unsworn July 2002 letter from an office manager at Pierson stating that Heriberto Negrete had been employed as a material handler there since September 1989. Oral testimony was also taken. Ezequiel Nieves-Galicia, Mr. Romano's brother-in-law (married to Mr. Romano's sister) testified that he was an employee at Pierson and that he met Mr. Romano at Pierson in 1989. He stated that Mr. Romano had been working at Pierson since that time. Mr. Nieves-Galicia also stated that he knew Mr. Romano as Heriberto Negrete, but learned of Mr. Romano's real name after he married Mr. Romano's sister. The IJ asked Mr. Nieves-Galicia if he had any proof of his own employment at Pierson, and he responded that although he did not have any identification with him at the hearing, the IJ could call the company to confirm that he was employed there.

Mr. Romano's second witness was Lorenzo Canete, the father of Santa Canete. Lorenzo Canete testified through a translator that he had known Mr. Romano since 1990

---

daughter Wendy is undergoing speech therapy, and that a relocation to Mexico would be traumatic for all three children. This evidence will be considered by the IJ on remand.

4

and that Mr. Romano had not left the United States since that time. Mr. Canete also stated that Mr. Romano and his daughter lived with him, and had done so at various addresses since 1990.

Santa Canete testified third, through a translator. She stated that she had known Mr. Romano since 1990, when she herself began working at Pierson Industries, and that Mr. Romano did not leave the United States after 1990. Like Mr. Nieves-Galicia, Ms. Canete was unable to provide documentary evidence that she worked at Pierson. Ms. Canete stated that Mr. Romano lived with her and her father beginning in 1993.

After the testimony of Ms. Canete, the IJ expressed some frustration with the evidence presented by Mr. Romano and suggested that Mr. Romano's employer should have testified. Mr. Romano's lawyer, Mr. Hecht, responded, "I'm told that the employer would not come . . . [t]hey don't care." Mr. Romano then testified. He stated that he came to the United States in 1989 and had worked at Pierson since that time, under the name of Heriberto Negrete.[2]

II

Following the hearing, the IJ began her Oral Decision in the case with a

---

[2] In his motion to this Court for stay of removal, Mr. Romano submitted an employee calendar showing Heriberto Negrete's attendance at Pierson by day beginning in September 1989. While this evidence was not before the IJ and therefore does not factor into our substantial evidence analysis, it does bolster our view that the IJ's finding that Mr. Romano was not continuously present in the United States for ten years was in error.

discussion of procedural concerns. She noted that she had a fast-track asylum application scheduled for that day and that she had invited Mr. Hecht to reschedule his hearing for another day. The IJ added that she had suggested to Mr. Hecht that a delay might be useful because his evidence of ten years of continuous presence appeared to be problematic, but that he had "insisted on going ahead today."

The IJ then considered the merits of the case. She held that because Mr. Romano's first child was born in the United States in July 1993, she assumed that Mr. Romano had been in the country continuously since nine months earlier, in November 1992. Mr. Romano therefore had to establish his presence in the United States only between June and November 1992.

Regarding the Pierson letter, the IJ stated that there was no evidence that the employment described in the letter had been continuous, "but frankly, the Court assumes that it has been." The IJ then noted, however, that the letter did not indicate what "reference" the office manager used in writing the letter, and that "even more disastrously," the letter was "totally unsworn." She added that "[t]o add insult to injury," Mr. Romano "did not even request that anybody from his company come here with any employment records" to testify as to Mr. Romano's continuous presence in the United States.

The IJ then considered the witness testimony. She suggested that Mr. Nieves' testimony was not reliable due to his familial relationship with Mr. Romano. She also

6

noted that Mr. Nieves did not provide evidence that he actually worked at Pierson, and that the home address listed in his signed affidavit was not the same as the address that he offered in his testimony. As for Ms. Canete and her father, the IJ noted that there were some conflicts in their testimony as to when and where Mr. Romano first lived with them, and when Mr. Canete met Mr. Romano. The IJ also noted that there was a discrepancy between the home address that Mr. Romano listed on his 1992 W2 form and the address listed on his application for cancellation of removal.

Based on this analysis, the IJ found that Mr. Romano had not established continuous presence in the United States for ten years. She summarized:

> There is an intuitive feeling here by the Court, that, sure, that probably the respondent might be able to try to figure out some way to prove all this, because indeed, there's absolutely no reason to disagree with Mr. Hecht that we have a room full of nice and good people who might be trying to tell the truth. But the problem is, is that the reliability of these claims is just not there, because there's just an inconsistency among them. It just seems to the Court that if someone's going to make a representation about something, that there ought to be some way to cross reference the information with some ease and unfortunately, the Court is struggling, because there's just no way to really do that with any ease in this hearing. To make matters worse, Mr. Romano did not even ask anybody from his company who could have come here with his employee records to testify today.

Mr. Hecht moved for a continuance to present more evidence, and the IJ denied the motion, stating that Mr. Hecht had known for several months that he would have to present evidence that day, and that it was inappropriate to ask to "try again" in the middle of the hearing. The IJ also suggested that due to the pressures of her case completion goals and limitations on the use of interpreters, a new hearing would not be

7

feasible. The IJ also noted that it had been Mr. Hecht's own decision to go forward with the hearing on the that day.

Based on her Oral Decision, the IJ ordered Mr. Romano's removal. The BIA affirmed the IJ's decision without opinion.

## STANDARD OF REVIEW

Where the BIA affirms the IJ's decision without opinion, this Court reviews the decision of the IJ. *Partyka*, 417 F.3d at 411. The IJ's findings of fact and credibility determinations are reviewed for substantial evidence. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). Where an adverse credibility determination is "based on speculation or conjecture, rather than on evidence in the record," it is reversible. *Id.*

## DISCUSSION

The IJ apparently determined that Mr. Romano's witnesses were credible. She stated that "no only is lying" and "everybody's . . . telling the truth today" and remarked on her "intuitive feeling" that the respondent could find some way to prove his case, and that the witnesses were "nice and good people who might be trying to tell the truth." Despite this positive assessment, the IJ denied Mr. Romano's application, stating that "the testimony can be as credible as the day is long . . . . But the problem really is, is it reliable evidence." Apparently, the IJ drew a distinction between testimony that is "credible" and testimony that is reliable. This distinction eludes us. The IJ repeatedly emphasized that Mr. Romano should have brought his employer to

8

the hearing to testify, or at least should have submitted a sworn letter from his employer. The IJ's insistence on this point was questionable, given that neither the statute nor the relevant regulations create any categorical evidentiary requirements for the establishment of ten years of continuous presence.

The IJ also noted some minor inconsistencies in the testimony of the witnesses, and suggested that the witnesses might be biased due to the their close relationship with Mr. Romano. While evaluation of bias is generally within the purview of the IJ rather than this Court, the IJ's discussion of bias cannot be reconciled with her various positive remarks about the credibility of the witnesses. Moreover, the inconsistencies raised by the IJ – for example, as to the year that Mr. Romano moved in with Ms. Canete and her father – were too insignificant to constitute the basis of an adverse credibility determination. *See Gao*, 299 F.3d at 272 ("minor inconsistencies and minor admissions . . . 'are not an adequate basis for an adverse credibility finding'") (citation omitted).

Based on the IJ's own view that Mr. Romano's witnesses testified truthfully, the letter from Mr. Romano's employer, and the common-sense assumption that Mr. Romano did not arrive in the United States on the day of his first child's conception, the IJ's denial of Mr. Romano's application was unreasonable and unsupported by substantial evidence.[3] We therefore grant the petition for review and refer this matter to

---

[3]Mr. Romano argues that the IJ also erred in denying his motion for a continuance. We are troubled by the IJ's strong emphasis on her case completion concern in denying

the BIA.

---

the continuance. *See, e.g.*, A. 45 ("[T]his Court cannot really then consider the motion to adjourn without considering the pressures placed upon an Immigration Judge by the Chief Immigration Judge himself"); A. 111 ("I'm not inclined to adjourn the case for more evidence, because it wasn't my idea, I mean I had another case I could have done this morning."); A. 138 (I'm trying to digest this new instruction from the Chief Immigration Judge . . . . Let me tell you something. The days of needing more time are now over."); A. 139 ("[T]he Chief Immigration Judge would probably be furious if he had an idea that a case was going to be adjourned, where we're paying for a Spanish interpreter . . . ."). We need not review the IJ's denial of a continuance, however, because we conclude that the IJ's finding as to ten years continuous presence was not supported by substantial evidence.