

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-28-2006

# Ding v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2249

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Ding v. Atty Gen USA" (2006). *2006 Decisions.* Paper 552.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/552

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 05-2249
_____

JING DING,
*Petitioner*


v.


ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Board No. A95-476-277)

_____

Submitted Under Third Circuit LAR 34.1(a)
May 8, 2006
Before: BARRY and SMITH, *Circuit Judges*, and DITTER[*], *District Judge*

(Filed August 28, 2006)

_____

OPINION
_____

---

[*]Hon. J. William Ditter, Jr., Senior United States District Judge, sitting by designation.

DITTER, *Senior United States District Judge.*

Jing Ding, a Chinese citizen and national, petitions for review of a final order of removal of the Board of Immigration Appeals (BIA). Having overstayed her business visa, Ding conceded removability. However, she applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). **[JA 31-32]** Ding contends that while in China she was subjected to a forced abortion; indeed, this assertion is the sole basis for her claim of persecution.[1] The Immigration Judge (IJ) found that while Ding may have faced government pressure to have the abortion, she failed to provide any corroboration that her decision was forced. Therefore, the IJ reasoned, Ding had not established she was the victim of persecution; had a well-founded fear of future persecution if she returned to China; or was entitled to asylum, withholding of removal, or CAT relief.[2] We have no difficulty concluding that a reasonable factfinder could agree with the IJ and we therefore deny Ding's petition for review.

### 1. Facts and Procedural History

Ding testified before the IJ that after she gave birth to a daughter in 1987, she was

---

[1] Both the Notice to Appear and the IJ stated that Ding had a business visa, but she testified that she remained in China after the abortion because she could not find a smuggler. [**AR 331, 68-69- 275**] Assuming that Ding was eligible for a business visa all along, it is not clear to us why she needed a smuggler to enter the United States.

[2] A woman who has been forced to have an abortion shall be deemed to have been persecuted on account of a political opinion. 8 U.S.C §1101(a)(42). Under 8 C.F.R. § 1208.13(b)(1), an alien who demonstrates past persecution creates a rebuttable presumption that he or she will be subjected to future persecution.

2

forced to have an Intra-Uterine Device (IUD) inserted and was required to attend regular checkups. **[JA 74]** Despite the insertion of the IUD, Ding again became pregnant in 1990. **[JA 61]** Ding and her husband felt "very happy" and wanted "to keep th[e] baby." **[JA 63]** However, as government employees, they were allowed only one child. **[JA 62]** To keep the pregnancy a secret, Ding took a leave of absence from work. **[JA 64-65]**

Nonetheless, Ding testified that government officials somehow learned of her pregnancy, appeared at Ding's home, and took her to a hospital by car. **[JA 64-65]** Ding further testified that she was restrained on a surgical table. **[JA 66]** She stated that an abortion was then performed without anaesthetic, even though she requested anaesthetic and cried in pain. **[JA 66]**

Although the IJ technically did not make an adverse credibility determination against Ding, he did note that there was not even a letter from her husband to corroborate her testimony that her abortion was forced.[3] **[JA 38]** During Ding's testimony, the IJ asked why she did not furnish such a letter, and Ding responded that she did not "know you guys want[ed] that letter." **[JA 89]**

The IJ also considered an abortion certificate that Ding submitted as corroboration,

---

[3]*See Xia Yue Chen v. Gonzales*, 434 F.3d 212, 221 (3d Cir. 2005) (stating that an adverse credibility determination should be "based upon inconsistent statements, contradictory evidence, and inherently improbable testimony," whereas corroboration hinges on the sufficiency of an applicant's evidence).

but the document stated that Ding agreed to the abortion. **[JA 37, 138]** Finally, the IJ noted that Ding remained in China for more than ten years after the abortion occurred and that she did not remove her IUD. **[JA 39]**

Ultimately, the IJ opined that Ding complied with China's family planning policies because "it was in her and her husband's best interest" to do so, not because of persecution. **[JA 39]** The IJ noted that Ding and her husband held government jobs, which they could lose if they failed to comply with China's family planning policies. **[JA 38-39]** The IJ cited *China: Profile of Asylum Claims and Country Conditions* (1998), a State Department publication contained in the administrative record. **[JA 92]** The profile states that the central government does not allow officials to use physical force to make women submit to abortions, although there are reports of forced abortions in some rural areas. **[JA 111]** Ding lived in Shanghai, an urban center. **[JA 35]**

The profile also states that individuals who resist China's family planning policy may be subjected to "stiff fines, withholding of social services, demotion, and other administrative punishments, including, in some instances, destruction of property and loss of employment." **[JA 111]** Conversely, those who comply with the policy may receive "monthly stipends and preferential medical, food, and educational benefits." **[JA 111]** The IJ found that Ding was not forced to have an abortion but consented to the procedure to preserve her job, status, position, and salary. **[JA 39]** The IJ found that because Ding had not been subjected to a forced abortion, there was no basis for any of her claims for

4

relief.

## 2. Discussion

We have jurisdiction over final orders of removal under 8 U.S.C. § 1252(a). *See Partyka v. Attorney General*, 417 F.3d 408, 411 (3d Cir. 2005). Where, as here, the BIA affirms the IJ without opinion, we review the IJ's decision directly. *Konan v. Attorney General*, 432 F.3d 497, 500 (3d Cir. 2005).

Central to the IJ's decision was his finding that Ding's claim failed because she presented no corroboration to support it. The REAL ID Act of 2005 provides that no court shall reverse a determination about the availability of corroborating evidence unless the court is compelled to conclude that such a determination is unreasonable. 8 U.S.C. § 1252(b)(4)(D); *see also Xia Yue Chen v. Gonzales*, 434 F.3d 212, 218 (3d Cir. 2005). The absence of corroboration requires a three-step analysis: "(1) an identification of facts for which it is reasonable to expect corroboration; (2) the presence or absence of such corroboration in the record; and (3) the adequacy of applicant's explanation for its absence." *Chen*, 434 F.3d at 220. This three-step process, which requires corroboration in some but not all cases, reflects BIA regulations. The relevant regulations state: "The testimony of the applicant, if credible, *may* be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. §§ 208.13(a) & 208.16(b) (emphasis added).

Considering the record as a whole, we have no doubt that a reasonable factfinder could agree with the IJ that Ding failed to provide corroboration that was necessary to

5

establish her claim that she was physically forced to have an abortion. Applying the steps outlined in *Chen* to this case, the IJ reasonably expected corroboration that the abortion was forced as opposed to voluntary. After all, as we noted in *Chen*, and as the State Department profile reveals, China's family planning policies often result in voluntary abortions. *See* 434 F.3d at 219 ("[T]hat a young woman in [petitioner's] circumstances voluntarily chose to have an abortion would hardly be an unusual event in China given the government's strong push for population control and the personal predicament in which petitioner found herself . . . ."). However, as stated above, the abortion certificate did not provide corroboration, and Ding failed to submit a letter from her husband regarding the abortion. Finally, the IJ concluded that Ding's explanation for the absence of corroboration—that she did not know it would be expected—was insufficient, a determination with which we agree.

Under these circumstances, we conclude that a reasonable factfinder could agree with the IJ that although corroboration was necessary, Ding failed to provide any corroboration for her claim that she suffered a forced abortion.[4] Indeed, we think that any reasonable factfinder *would* reach this conclusion. Since the allegedly forced abortion

---

[4]In *Chen*, we upheld the IJ's finding that the petitioner failed to provide sufficient corroboration, even though the petitioner did offer *some* corroboration. 434 F.3d at 218. Here, Ding offered *no* evidence to corroborate her claim that she was physically forced to have an abortion.

was the sole basis for all of Ding's claims for relief, we deny Ding's petition for review.[5]

---

[5]The IJ appears to have placed considerable emphasis on the fact that the abortion certificate that Ding submitted as evidence states that she agreed to the procedure. According to *China: Profile of Asylum Claims and Country Conditions* (1998), China officially prohibits forcing a woman to have an abortion, but there are reports that local officials have done so anyway. Therefore, we think it entirely possible that a woman forced to have an abortion would be given a certificate stating that the abortion was voluntary.

Although the abortion certificate does not necessarily undermine Ding's testimony that the abortion was forced, it also does not provide the corroboration that the IJ reasonably sought.