

2007 Decisions

Opinions of the United States Court of Appeals for the Third Circuit

12-5-2007

# Subah v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5525

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Subah v. Atty Gen USA" (2007). *2007 Decisions.* Paper 140.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/140

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_______________

No: 05-5525

_______________

QUAQUA SUBAH,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_______________

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A77-475-844)
Immigration Judge: Honorable Grace A. Sease

_______________

Argued November 7, 2007

Before: SCIRICA, *Chief Judge*, AMBRO and JORDAN, *Circuit Judges*

(Filed December 5, 2007)

_______________

Charles T. Kotuby, Jr. [ARGUED]
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
*Counsel for Petitioner*

Jonathan Potter
Paul F. Stone [ARGUED]
U.S. Department of Justice
Office of Immigration Litigation
P. O. Box 878
Ben Franklin Station
Washington, DC 20044
*Counsel for Respondent*

---

OPINION OF THE COURT

---

JORDAN, *Circuit Judge.*

QuaQua Subah ("Subah") petitions for review of an Order of the Board of Immigration Appeals ("BIA") ordering him removed from the United States to Liberia. After holding that Subah's conviction for corruption of a minor under 18 Pa.C.S. § 6301(a)(1) had been established by clear and convincing evidence and was a crime involving moral turpitude, an Immigration Judge ("IJ") nevertheless granted Subah's application for adjustment of status from refugee to permanent resident alien and for a waiver of inadmissibility under section 209 of the Immigration and Nationality Act ("INA"). The U.S. Department of Homeland Security ("DHS") appealed that decision, and the BIA reversed the waiver of inadmissibility under section 209(c) of the INA, rendering Subah ineligible for adjustment of status under section 209(a). Because we conclude that the BIA erred in affirming the IJ's decision that Subah committed a crime involving moral turpitude, we will grant the petition for review, reverse the decision that

Subah committed a crime involving moral turpitude, and remand the case for a proper determination of Subah's I-485 application for adjustment of status.

## I.     Factual And Procedural Background

Subah is a native and citizen of Liberia.  In 1999, at the age of 29, he left Liberia to live in a refugee camp in Ghana.  On June 28 of that year, he entered the United States as a refugee and joined his father, brother, uncle, and cousin in Philadelphia.

While in Ghana, Subah became acquainted with Sieayene Williams ("Williams").  Though not a blood relative of Subah's, Ms. Williams is Subah's father's wife's niece.  Upon arriving in the United States, she lived in Subah's father's house in Philadelphia for six months with her entire family.  Subah also lived there and, supposedly with the knowledge and approval of their families, Subah and Williams became romantically involved.  In May of 2001, Williams became pregnant with Subah's child and gave birth to a daughter on January 18, 2002.

In September of 2002, Subah was arrested, after Ms. Williams filed a complaint which alleged that in May of 2001, she was raped by a man she had never met before but who identified himself as QuaQua Subah.  According to the complaint, Williams was walking to a friend's house when a man in a green car stopped and offered her a ride.  He allegedly drove the car to a secluded area and raped her.  Williams said that, in addition to providing his name, the rapist told her his age and address.  She also told police that she had told the rapist she was only 14 years old.

On May 9, 2003, Subah pleaded guilty before the Court of Common Pleas of Philadelphia County to the misdemeanor of corrupting a minor in violation of 18 Pa.C.S. § 6301.[1] He was not charged with, much less convicted of, rape because, after meeting with Williams several times, the district attorney doubted the veracity of Williams's complaint. Those doubts deepened when, while meeting with Williams's family, the prosecutor learned that Williams had actually known and lived with Subah before the alleged rape. Furthermore, the district attorney decided there was inadequate evidence even for a statutory rape charge because the only corroboration that Williams was 14 years old was the statement of a family friend who claimed to have been present at Williams's birth in Liberia.

During the plea hearing on May 9, 2003, the Court of Common Pleas judge recognized, and the district attorney agreed, that the "bottom line" was that Williams "had a relationship with [Subah]. She got pregnant. She tried to cover it up and here we are." (Petitioner's Brief at 9; Appx. at 178.) During the plea colloquy, Subah's lawyer made it clear that Subah only "accepted responsibility that [Williams] was under the age of 18, and **...** they have a child together. But that's all he's accepted responsibility for." (Appx. at 180.) Subah maintained that he believed that Williams was older than 14. The court

---

[1] 18 Pa.C.S. § 6301(a)(1) defines the offense as "Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree."

accepted the plea, holding that Subah's concession "equates to corrupting the morals of a minor." (Appx. at 180.)

Subah filed an I-485 "Application to Register Permanent Residence or Adjust Status" and an I-602 "Application by Refugee for Waiver of Grounds of Excludability." On May 11, 2004, the United States Citizenship and Immigration Services ("CIS") denied Subah's applications, and, on June 29, 2004, the DHS charged Subah with being removable for not having a valid entry document and for having been convicted of a crime involving moral turpitude. The Immigration Court conducted a hearing on the charges, which included a review of the CIS's denial of Subah's applications. As earlier noted, the IJ held that Subah's misdemeanor conviction for corrupting a minor was a crime involving moral turpitude. However, the IJ granted Subah's application for a waiver and ordered that Subah's application for adjustment of status be granted.

The IJ did not provide an explanation as to why the crime for which Subah was convicted should be deemed a crime involving moral turpitude. Instead, the IJ determined that the CIS had applied an incorrect standard in initially denying the waiver of inadmissibility. According to the IJ, Subah's application for a waiver required a balancing of the evidence for and against the application. The IJ opined that an application for waiver of inadmissibility requires a broad look at family reasons, public policy reasons, and humanitarian reasons bearing on the propriety of a waiver. Deciding that Subah did not commit a violent and dangerous crime, the IJ went on to exercise her

discretion and decide that Subah's family interests in remaining in the United States, when combined with concerns over continuing violence in Liberia, outweighed the misdemeanor conviction. She thus held that Subah's applications for a waiver of inadmissibility and for an adjustment of status should be granted, and she entered an order to that effect.

DHS appealed that order, and a majority of a BIA panel reversed the IJ's decision. Without providing its reasoning, the BIA upheld the IJ's determination that Subah's conviction for corruption of a minor was a crime involving moral turpitude. However, the BIA decided that the IJ erred in her application of the waiver of inadmissibility standard because she should have found that Subah's conviction was for a violent and dangerous crime. Under the standard articulated in *In re Jean*, 23 I&N Dec. 373 (A.G. 2002), once there is a finding that the crime committed was dangerous and violent, only a determination that "extraordinary circumstances" exist will permit a waiver application to be granted.[2] The BIA found that Subah had failed to establish the existence of extraordinary circumstances and therefore denied Subah's application for a waiver of inadmissibility.

---

[2] This is a heightened standard from that normally applied under 8 U.S.C. § 1159(c).

## II. Discussion[3]

Subah applied for adjustment of status and waiver of conviction. Adjustment of status is automatically denied if the alien is convicted of a crime involving moral turpitude. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I) (rendering inadmissible any alien convicted of a crime involving moral turpitude). The IJ determined that Subah committed a crime involving moral turpitude. However, the IJ granted the adjustment of status by waiving the effect of that conviction. The IJ was able to do so because the U.S. Department of Justice is empowered to waive a conviction, and hence inadmissibility, and to grant adjustment of status despite an alien's conviction for a crime involving moral turpitude, if the Attorney General or a designee determines waiver is warranted "for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest." 8 U.S.C. § 1159. Because we vacate the BIA's decision and remand the case on the basis that the IJ and BIA erred in finding that Subah's conviction for corruption of a minor under 18 Pa.C.S. § 6301 was a crime involving moral turpitude, we do not reach the issue of whether the BIA properly denied the waiver.[4]

---

[3] We have jurisdiction to review final orders of removal entered by the BIA under 8 U.S.C. § 1252(a)(1). Our review of the BIA's legal determinations is *de novo*. *Partyka v. Attorney General*, 417 F.3d 408 (3d Cir. 2005). Whether the BIA exceeded its statutory authority is a question of law.

[4] The government contends that Subah's claim is jurisdictionally barred because he did not appeal to the BIA the IJ's decision that his conviction was a crime involving moral turpitude. We disagree because Subah exhausted his administrative remedies as of right. The IJ granted Subah the relief he sought when the waiver of conviction was granted, allowing his adjustment of status. There was no other relief Subah could have been

Subah argues that the IJ improperly held that corruption of a minor should be classified as a crime involving moral turpitude. Specifically, Subah maintains that the IJ erred in taking a "fact-based," as opposed to a "categorical" approach in classifying the state conviction. He points to Third Circuit precedent holding that, in determining whether an alien's crime involves moral turpitude, a categorical approach should be taken. *Partyka v. Attorney General*, 417 F.3d 408, 411 (3d Cir. 2005).

Under the categorical approach,

> [w]hether the alien's crime involves moral turpitude is determined by the criminal statute and the record of conviction, not the alien's conduct. Under this categorical approach, we read the applicable statute to ascertain the least culpable conduct necessary to sustain a conviction under the statute. As a general rule, a criminal statute defines a crime involving "moral turpitude only if all of the conduct it prohibits is turpitudinous."

*Id.* (citations omitted). Therefore, the first step in making a moral turpitude finding requires looking at the language of the statute that was violated, not at the underlying conduct upon which the conviction was based. The second step in making a moral turpitude finding involves ascertaining the "least culpable conduct necessary to sustain a conviction under the statute." *Partyka*, 417 F.3d at 411.

---

granted by appealing that decision. Therefore, to deny Subah the opportunity to now raise the issue would result in manifest injustice. *Cf. Gill v. INS*, 420 F.3d 82, 86-88 (2d Cir. 2005) (holding that issue petitioner failed to first present before the BIA was not jurisdictionally barred because the argument was a subsidiary argument to the issue on appeal, and to deny petitioner the opportunity to raise it would result in manifest injustice).

Under 18 Pa.C.S. § 6301(a)(1), corruption of a minor occurs when: (1) a person "of the age of 18 years and upwards," (2) "by any act corrupts or tends to corrupt the morals," (3) "of any minor less than 18 years of age." Subah maintains that "because the statute does not 'specify a *mens rea* requirement, Pennsylvania law requires that, at the very least, the defendant act negligently.'" (Petitioner's Brief at 22.) Therefore, under the second step, "the least culpable conduct necessary to sustain a conviction" under the statute is the negligent commission of any act that corrupts or tends to corrupt the morals of a minor. (*Id.*)

Subah points to our decision in *Partyka*, in which we defined a crime involving moral turpitude, consistent with BIA jurisprudence, as one exercised with a "vicious motive[,] ... corrupt mind[,] ... [or with an] evil intent." *Partyka*, 417 F.3d at 413. He argues that acts of negligence cannot be deemed turpitudinous under this definition because acts rendered negligently are not rendered with an "evil intent" or "vicious motive."[5] Therefore, he contends, his conviction for corruption of a minor cannot be deemed turpitudinous.

---

[5] 18 Pa.C.S. § 302(b)(4) (2007) provides the definition of negligence: "A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation."

We agree. Subah is correct that our precedent requires a categorical approach when determining whether a conviction is for a crime involving moral turpitude. *Partyka*, 417 F.3d at 411. Under that approach, the least culpable conduct necessary to sustain a conviction for corruption of a minor under the Pennsylvania statute is negligence. *See*; *USA v. Galo*, 239 F.3d 572, 582 (3d Cir. 2001) ("The [Corruption of Minors] statute is aimed at conduct of any nature that tends to corrupt children. It is broad enough to include allowing a minor to view an 'R' rated video."); *see also Alexander v. Shannon,* 2005 U.S. Dist. LEXIS 1626, at *19 (E.D. Pa. 2005) (explaining that although Corruption of Minors lacks a *mens rea* requirement, at the very least, a person convicted under the statute must have acted negligently). Under the INA, crimes involving proof of negligence or a less culpable *mens rea*[6] are not crimes of moral turpitude.[7] *Partyka*, 417 F.3d at 414-16.

---

[6]Some conduct that is criminal under 18 Pa.C.S. § 6301(a)(1) does not include a *mens rea* element at all, since subsection (d)(1) of § 6301 provides that, "[w]henever in this section the criminality of conduct depends upon the corruption of a minor whose actual age is under 16 years, it is no defense that the actor did not know the age of the minor or reasonably believed the minor to be older than 18 years."

[7]Even if the BIA and IJ had been correct that this was a crime involving moral turpitude, we would nevertheless have concern about the BIA's reversal of the IJ's decision on waiver because it appears that the BIA exceeded its statutory authority and engaged in *de novo* fact-finding. Subah was not charged with statutory rape, and he did not plead guilty to any such charge. Furthermore, neither the District Court nor the IJ found that Ms. Williams was under the age of sixteen, which is the age of consent in Pennsylvania for purposes of the statutory rape law. 18 Pa.C.S. § 3122.1. By stating that "[t]he indictment and the transcript of the guilty plea essentially indicate that the minimum crime to which the respondent admitted was statutory rape," (Appx. at 6) the BIA ignored what the record actually reflects, namely that Subah never conceded the age

## III.    Conclusion

For the reasons stated, we vacate the BIA's decision and remand the case for a new determination of Subah's I-485 application for adjustment of status.

---

of Ms. Williams and that the state prosecutor evidently concluded he could not prove her age.  The indictment and transcript simply do not support the BIA's conclusion.  The only way to reach the BIA's conclusion is to assume facts that are no where in evidence and which, indeed, the prosecutor, and later the IJ, appeared to reject.