

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-20-2005

# Arapaj v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4154

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Arapaj v. Atty Gen USA" (2005). *2005 Decisions.* Paper 84.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/84

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-4154

NJAZI ARAPAJ,
Petitioner

v.

*ALBERTO GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

*(Amended pursuant to F.R.A.P. 43(c))

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A79-043-029)

Submitted Under Third Circuit LAR 34.1(a)
Submitted December 5, 2005

Before: RENDELL, FISHER and VAN ANTWERPEN, Circuit Judges.

(Filed December 20, 2005)

OPINION OF THE COURT

RENDELL, Circuit Judge.

Njazi Arapaj, on his own behalf and that of his family, petitions for review of a

decision by the Board of Immigration Appeals ("BIA") affirming the decision of the

Immigration Judge ("IJ") in denying Arapaj's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. Inasmuch as we find that substantial evidence in the record supports the agency's finding, we will deny Arapaj's petition for review.

After a hearing in which Arapaj presented testimony in support of his claim, the immigration judge made an adverse credibility determination, finding that Arapaj had not testified credibly, and thus had not carried his burden of proof with respect to establishing eligibility for asylum. The BIA affirmed the IJ's decision *per curiam* and without opinion.

Arapaj challenges the IJ's adverse credibility determination. Where, as here, the BIA affirms the IJ's decision without opinion, we review the IJ's decision. *Partyka v. Attorney General*, 417 F.3d 408, 411 (3d Cir. 2005). An adverse credibility determination is a factual finding reviewed under the substantial evidence standard. *Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir. 2003) (en banc). Under this standard, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). "Thus, the question whether an agency determination is supported by substantial evidence is the same as the question whether a reasonable fact finder could make such a determination based upon the administrative record." *Id.* at 249.

Njazi Arapaj, his wife, and three children are natives and citizens of Albania. Arapaj brought his wife and three sons into the United States without authorization on or

2

about October 20, 2001, across the Mexican border with Texas. On October 24, 2001, the Immigration and Naturalization Service ("INS") issued to Arapaj a Notice to Appear for removal proceedings. Arapaj applied for asylum, withholding of removal, and requested protection under the CAT.

At the hearing before the IJ, Arapaj testified that he was a well-known and active member of the Democratic Party of Albania. As a result of his political activities, attempts were made on his life and the lives of his children. He was repeatedly threatened, abducted, tortured, and beaten for his political activism. His children were also beaten and an attempt was made to abduct them. Twice, he was forced to take his family into hiding. His political activities aside, Arapaj's family was a well-known anti-communist family. As a result, their property was taken from them and his father and oldest brother were forced to work in the mines of Selica. The danger to himself and his family from the political opponents of the Democratic Party caused Arapaj to take his family and seek asylum in the United States.

The IJ cited a number of concerns and discrepancies with respect to Arapaj's testimony. We need focus only on one, which we believe provides substantial evidence for the IJ's adverse credibility determination, namely the omission of arrests in Arapaj's initial application.

First, we note that Arapaj submitted two separate affidavits in this case, an initial statement dated August 14, 2002, and a supplemental affidavit dated August 1, 2003. The second affidavit purports to be more complete and to correct errors in dates contained in

the first statement. Both affidavits were submitted prior to Arapaj's removal hearing and the IJ's decision.

Arapaj's first affidavit was five pages long, contained thirty-one paragraphs, and was prepared with the assistance of an attorney provided by Catholic Social Services. It contained no mention of the October 2000 or June 2001 arrests. Arapaj's second affidavit, submitted almost a year later, however, contained descriptions of these incidents. Of the October 2000 arrest, Arapaj stated:

> Three days before the October 1 election, Special Forces came to the house at about 4:00 in the afternoon. The family was home. Six officers kicked open the door, took out their weapons, told the family not to move and grabbed me and took me downstairs to their car.... I was taken to the Vlore police station for twenty four hours. They interrogated me about my party work as an activist. They wanted to know our organizing plans, where we met, how many of us. I was handcuffed to a chair and beaten by an officer who stood behind me, if I refused to answer the questions from the interrogator. I saw no doctor but took pain killers for the pain.

Arapaj Affidavit at 7. Of the June arrest, Arapaj stated: "I was picked up for twenty four hours and tortured badly. The police hung me by my arms without my feet touching the floor...." *Id.* Arapaj elaborated during the hearing: "I was naked, my whole body was showing and they hung me from my hands and my feet were not touching the ground, they were barely, just a little bit." Hearing Tr. at 54.

Despite their horrific nature, neither of these episodes was mentioned in Arapaj's initial affidavit, though numerous less recent and less dramatic events were included. In viewing this omission (along with the omission of two other arrests), the IJ observed: "[I]t is impossible for this Court to reconcile how, at minimum, the specific events that largely

4

motivated the respondent's departure, namely his four arrests and most importantly the allegedly horrific manner in which he was hung upside down naked and abused by security forces in Albania would have somehow not made it to the preparation of the content of the first application for asylum." Oral Dec. at 32-33. We agree with the IJ that it is difficult to imagine how Arapaj could have forgotten to include these arrests in his initial thirty-one paragraph affidavit. This omission was not incidental or ancillary; rather, the arrests and ensuing abuse go to "the heart of the asylum claim." *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002).

While in the context of the facts before us, we note that this omission is sufficient to support the IJ's adverse credibility finding under the substantial evidence standard, we note that the IJ identified several additional inconsistencies among petitioner's testimony and affidavits, including a discrepancy as to the month when gunmen allegedly assaulted his home.

Upon review of the IJ's decision and of the record of this case, we conclude that a reasonable adjudicator would not be compelled to make contrary findings. We hold that the IJ's adverse credibility determination, adopted by the BIA, was supported by substantial evidence. Accordingly, we will deny the petition for review.