

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-11-2006

# Beridze v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5315

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Beridze v. Atty Gen USA" (2006). *2006 Decisions.* Paper 110.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/110

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-5315

———

ZURAB BERIDZE,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

———

On Petition for Review of an Order
of the Board of Immigration Appeals
(BIA No. A79-743-480)
Immigration Judge: Miriam K. Mills

———

Submitted pursuant to Third Circuit LAR 34.1(a)
November 27, 2006

Before: FUENTES and GARTH, Circuit Judges, and POLLAK,* District Judge.

(Filed:   December 11, 2006 )

———

OPINION OF THE COURT

———

* The Honorable Louis H. Pollak, Senior District Judge for the United States
District Court for the Eastern District of Pennsylvania, sitting by designation.

FUENTES, <u>Circuit Judge</u>.

Zurab Beridze petitions for review of a decision of the Board of Immigration Appeals ("BIA") summarily affirming an immigration judge's order denying his requested relief. We will deny Beridze's petition for review.

## I.

Beridze, a 43-year old native and citizen of Georgia, entered the United States in July 2002 as a visitor for pleasure. On March 11, 2003, after overstaying his B-2 visa, Beridze was served with a Notice to Appear before an immigration judge. On September 16, 2004, Beridze appeared before Immigration Judge Miriam Mills ("IJ"). He conceded removability, but sought asylum, withholding of removal, and relief under the Convention Against Torture. Beridze's claims for relief rested on his stated fear that, were he to return to Georgia, he would be killed or seriously injured by government officials on account of his political views. At the proceedings, the IJ heard testimony from Beridze and considered several documentary submissions, including reports on country conditions in Georgia and Beridze's I-589 application statement.

Beridze testified that he was a supporter of Zviad Gamsakhurdia, the first democratically-elected leader of Georgia. According to Beridze, after Gamsakhurdia was forced from power in 1991, over ninety percent of Georgians still supported him. Yet, although he claimed to support Gamsakhurdia, Beridze testified that he was never

affiliated with a political party, nor was he "politically involved" in any way. Beridze further testified that, because of his support for Gamsakhurdia, his car was bombed in May 1999, his home was attacked by gunmen in September 1999, his life was threatened by a car bomb in January 2000, and he was beaten on his front lawn in March 2002. Beridze submitted no documentation to corroborate these incidents.

The IJ denied relief based on an adverse credibility determination—she cited numerous reasons to doubt Beridze's veracity. Primarily, the IJ doubted that Beridze was politically affiliated with Gamsakhurdia or that he was attacked because of his political views. The IJ noted that Beridze provided no affidavits from fellow Gamsakhurdia supporters corroborating his political views. She also found significant that Beridze admitted that he had never been affiliated with any political party in Georgia, nor had he ever been politically active. Furthermore, besides there being no evidence or testimony to establish Beridze's political affiliation, the IJ noted that Beridze's testimony demonstrated an ignorance of politics in Georgia.

Furthermore, the IJ did not believe Beridze's accounts of persecution. For example, the IJ doubted Beridze's account of the 1999 shooting of his home. Beridze had failed to mention it in his I-589 application and failed to provide any supporting affidavits from his parents who, as Beridze explained, were present at the time of the incident. The IJ also doubted the March 2002 beating, since Beridze provided no medical records, even though he claimed that the beating resulted in two weeks of hospitalization. Considering the foregoing evidence, the IJ found it "totally implausible" that the violent incidents in

-3-

1999 and 2000 resulted from Beridze's minimal political activity in 1991.

At the conclusion of the hearing, the IJ denied Beridze's requests for asylum, withholding of removal and relief under the Convention Against Torture, but allowed Beridze to depart voluntarily within 60 days. On appeal, the BIA summarily affirmed. This petition followed.

**II.**

The BIA had jurisdiction to review the IJ's order under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction to review the BIA's order under 8 U.S.C. § 1252. When the BIA summarily affirms an IJ's decision, we review the IJ's decision. Partyka v. Attorney General, 417 F.3d 408, 411 (3d Cir. 2005). An IJ's adverse credibility determination is reviewed for substantial evidence. See Berishaj v. Ashcroft, 378 F.3d 314, 323 (3d Cir.2004). Under this standard, we will uphold an adverse credibility determination unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004).

In his petition for review, Beridze claims that the IJ misinterpreted the country conditions in Georgia and therefore improperly concluded that he would not be persecuted upon return. In particular, he claims that the IJ erroneously found that changed country conditions rebutted his claim of a well-founded fear of persecution. Yet, as the government points out, the IJ considered Georgian country conditions not to rebut his well-founded fear, but rather as a component of her determination that Beridze had no such fear. Relying in part on country conditions, but primarily on Beridze's own

testimony, the IJ simply did not believe that Beridze's claimed political support of Gamsakhurdia in the early 1990's—at a time when ninety percent of the population supported him—led to the uncorroborated accounts of persecution almost ten years later.

Considering the evidence presented in the record, the IJ's determination is not without the support of substantial evidence. The IJ based its conclusions on a particularized assessment of Beridze's own statements about his political affiliation and persecution. Beridze admitted that he never belonged to any political party and was not actively involved in support of Gamsakhurdia. Indeed, by failing even to recognize the names of Georgia's political parties, he demonstrated that he did not "know much" about Georgian politics. Furthermore, Beridze failed to provide documentary support for his accounts of persecution, support that one would reasonably expect him to procure, nor did he provide compelling explanation for his failure to do so. Finally, Beridze presented neither evidence nor testimony linking the four attacks to his minor political involvement in the early 1990's—no evidence in the record compels a finding that those attacks were motivated by Beridze's political views. In sum, a reasonable adjudicator could determine that Beridze's account of persecution was not credible.

## III.

After reviewing the record, we cannot say that a reasonable adjudicator would be compelled to find that Beridze's testimony was credible. We therefore conclude that the IJ's adverse credibility determination is supported by substantial evidence. Accordingly, we will deny Beridze's petition.