

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-9-2007

# Riyanto v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5189

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Riyanto v. Atty Gen USA" (2007). *2007 Decisions.* Paper 802.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/802

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-5189


RIYANTO; MARIA SAPTANINGROEM,
                                            Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                            Respondent


On Petition for Review of an Order of the
Board of Immigration Appeals
BIA Nos. A96-251-992 and A96-251-993
(U.S. Immigration Judge: Honorable Charles M. Honeyman)


Submitted Pursuant to Third Circuit LAR 34.1(a)
April 23, 2007

Before:  SCIRICA, Chief Judge, FUENTES and ALARCÓN[*], Circuit Judges.

(Filed: July 9, 2007)


OPINION OF THE COURT


SCIRICA, *Chief Judge*.

---

[*]The Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Judicial
Circuit, sitting by designation.

Riyanto[1] and Maria Saptaningroem, his wife, petition for review of the Board of Immigration Appeals' November 9, 2005, order affirming an Immigration Judge's denial of their application for asylum. We will deny the petition and affirm the BIA's order.

**I.**

Riyanto and Saptaningroem are natives and citizens of Indonesia. Saptaningroem entered the United States in December 2001, followed by Riyanto in May 2002, both on nonimmigrant visitor visas. Riyanto applied for asylum in February 2003, claiming he had suffered past persecution in Indonesia on account of his religious beliefs.[2] Riyanto identifies himself as a Charismatic Christian, a former member of two churches in Indonesia, and, after his arrival here, a member of a church in Philadelphia. He also sought withholding of removal under § 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3). His application was also considered as a request for relief under the Convention Against Torture. In April 2003, both petitioners were served by the INS with Notices to Appear charging they had overstayed the terms of their visas and were removable from the United States.

In his asylum application, Riyanto described a motorcycle robbery in the Spring of 1998 during which he was injured. Riyanto contended that, although the robbery was initially economically motivated, his assailants discovered an identity card that identified

_____

[1] Riyanto has no given name.

[2] Saptaningroem did not file her own application for asylum, but was found by the IJ to be a derivative asylum applicant.

2

him as a Christian, and that this knowledge contributed to their mistreatment of him. He also described being caught up in civil disturbances in 1999 in Ambon, Indonesia, where he was working for a contractor, and his ultimate evacuation from the area by the government to a military facility. He subsequently lived and worked in the Indonesian capital, Jakarta, before traveling to the United States.

After a hearing, the IJ denied Riyanto's application in a September 14, 2004, oral decision, finding that although his testimony was credible, Riyanto failed to show a reasonable possibility that he would be singled out for persecution in the future because of his religious beliefs. The IJ considered evidence of the general conditions for Christians in Indonesia, and determined that although there are pockets of the country that may be less safe for Christians than others, there is no pattern or practice of persecution of Christians on a countrywide basis. The IJ noted Riyanto's decision to remain in Jakarta for nearly two years, without incident, before coming to the United States bolstered this conclusion.

Separately, specifically evaluating Riyanto's claims under the Convention Against Torture, the IJ again found Riyanto to be credible, but determined it was unlikely he would suffer any human rights abuses at the hands of state actors or agents. The IJ denied Riyanto's asylum application and his wife's derivative application, and ordered the couple removed to Indonesia.

Among other evidence, the IJ considered Riyanto's affidavit and testimony, State Department reports on Indonesia and religious freedom, a news article about the bombing

3

of the Australian Embassy in Jakarta, and other materials on conditions in Indonesia. Riyanto, when asked why he had stayed in Jakarta for roughly two years before leaving for the United States—several months after his wife's departure—said he had to arrange for care of his son, who remained in Indonesia in the care of Saptaningroem's parents, and that he wanted to complete a work assignment. The IJ found the evidence was insufficient to show Riyanto suffered past persecution. The IJ also determined the record did not show an objectively plausible and defensible basis for Riyanto's subjectively genuine concern about returning to Indonesia.

Riyanto appealed the IJ's decision to the BIA. The BIA affirmed without opinion under 8 C.F.R. § 1003.1(e) on November 9, 2005, rendering the IJ's decision the final BIA determination. This petition for review followed.

## II.

The BIA had jurisdiction to review the IJ's order under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction to review the BIA's final order under 8 U.S.C. § 1252.

Where the BIA affirms the IJ's decision without opinion under 8 C.F.R. § 1003.1(e), we review the IJ's decision. *Partyka v. Attorney General*, 417 F.3d 408, 411 (3d Cir. 2005). We review legal determinations de novo, subject to established principles of deference. *Smriko v. Ashcroft*, 387 F.3d 279, 282 (3d Cir. 2004). Under 8 U.S.C. § 1252(b)(4)(B), "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Factual findings must be upheld if they are "supported by reasonable, substantial, and probative evidence on the

4

record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). This substantial evidence standard applies to determinations whether an alien has experienced or has a well-founded fear of persecution. *See Abdille v. Ashcroft*, 242 F.3d 477, 483–84 (3d Cir. 2001).

## III.

Riyanto appeals the IJ's finding that he did not suffer past persecution and that he does not have an objectively reasonable fear of future persecution upon his return to Indonesia.

"[P]ersecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional. If persecution were defined that expansively, a significant percentage of the world's population would qualify for asylum in this country—and it seems most unlikely that Congress intended such a result." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993). An applicant has the burden of establishing eligibility for asylum, withholding of removal, and relief under the Convention Against Torture. The applicant may satisfy the burden through his or her own credible testimony. *Mulanga v. Ashcroft*, 349 F.3d 123, 133 (3d Cir. 2003) (citing 8 C.F.R. §§ 208.13, 208.16). However, even a credible applicant may be required to provide corroborating evidence in order to meet their burden of proof. *Id.*

The IJ found Riyanto was credible, and that he was the victim of a robbery, as well as some harassment and discrimination at other points in his life. Other findings were that Riyanto was working in a part of Indonesia that was rife with civil disturbances and

5

violence between Muslims and Christians. However, the IJ also found Riyanto was able to leave the area and that he was not personally targeted, with the sole exception being the robbery, which occurred at a time when Indonesian society was breaking down and primarily Christians were targeted. The IJ found that the robbery was already underway when Riyanto's ID card was found, and that, most likely, Riyanto's identification as a Christian exacerbated the attack, rather than motivating it. The IJ concluded that the single robbery was not sufficiently severe to rise to the level of persecution. Furthermore, the IJ found that because there was no other incident in the record that rose to the level of persecution, that Riyanto had failed to show he was the victim of any past act of persecution.

We hold the IJ's factual determinations were "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Elias-Zacarias*, 502 U.S. at 481.

The IJ found as a matter of law that because Riyanto had not shown he was the victim of past persecution, he had not established a rebuttable presumption of future persecution. 8 C.F.R. § 208.13(b)(1). We agree. Thus the IJ sought to determine whether Riyanto had established a well-founded fear of future persecution should he be returned to Indonesia. A well-founded fear of future persecution is shown by establishing a subjectively genuine and objectively reasonable fear of persecution. *See Gao v. Ashcroft*, 299 F.3d 266, 273 (3d Cir. 2002). The subjective component is met where the applicant gives credible testimony establishing a genuine fear of persecution. *Lusingo v.*

6

*Gonzales*, 420 F.3d 193, 199 (3d Cir. 2005). The objective component, however, requires "credible, persuasive, and specific" evidence reasonably supporting that subjectively genuine fear. *Id.*

As noted, the IJ found Riyanto's testimony credible, and that he had shown a subjectively genuine anxiety or fear of a return to Indonesia. To determine whether that fear was objectively reasonable, the IJ examined the evolving conditions within Indonesia. The IJ found that between 1998 and 2001, there were periods when the degree of targeting of Christians in Indonesia may have been sufficient to establish a pattern or practice of organized, systemic, or pervasive persecution of Christians as a group. However, conditions in the year prior to the IJ's September 2004 ruling no longer supported such a conclusion. The IJ examined the State Department's 2003 Religion Report and Country Report on Indonesia, as well as the 2004 Annual Report of the United States Commission on International Religious Freedom. The IJ concluded that with the exception of three parts of the country, even periodic bombings or terrorist attacks aimed at destabilzation of the country could not generally be attributed to the targeting of Christians. The IJ's factual findings in this regard were supported by substantial evidence. The IJ found, therefore, that although Riyanto had credibly testified to a subjectively reasonable fear of persecution based on his religious belief, he had not offered evidence that established that his fear was objectively reasonable on a

countrywide basis.[3]  The IJ concluded that Riyanto had not met his burden to show he was eligible for asylum or withholding of removal.  We agree.

The IJ separately considered Riyanto's claim under the Convention Against Torture.  To qualify for relief under Article 3 of the Convention Against Torture, an applicant must prove that it is more likely than not that, if removed, he would be tortured "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."  8 C.F.R. § 208.18.  The IJ considered Riyanto's testimony, and reiterated that he was credible.  However, reviewing his testimony and the other evidence in the record of human rights abuses that do take place in Indonesia, the IJ concluded that Riyanto was unlikely to suffer any of those abuses at the hands of state actors or agents.  Nor was it likely that Riyanto would be detained by the government or harmed in a manner that would rise to the level of torture.  We hold the IJ's findings were supported by the substantial evidence.

## IV.

We will deny the petition and affirm the BIA's order.

---

[3] The IJ noted Riyanto was likely to return to Jakarta, where he had lived without incident for nearly two years immediately before arriving in the United States.