

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-14-2007

# HU v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2124

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"HU v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1485.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1485

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2124

———

SHUNHUA HU,

*Petitioner*

v.

ATTORNEY GENERAL OF THE UNITED STATES,

*Respondent*

———

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A78-296-620)
Honorable Rosalind K. Malloy, Immigration Judge

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 13, 2007

Before: FUENTES, VAN ANTWERPEN, and SILER*, *Circuit Judges*.

(Filed: March 14, 2007)

———

OPINION OF THE COURT

———

_____
*The Honorable Eugene E. Siler, Jr., Senior Circuit Judge for the United States Court of
Appeals for the Sixth Circuit, sitting by designation.

VAN ANTWERPEN, *Circuit Judge.*

Petitioner Shunhua Hu, a native and citizen of the People's Republic of China, seeks review of the March 10, 2005, Order of the Board of Immigration Appeals ("BIA"), affirming without opinion the June 13, 2003, Order of the Immigration Judge ("IJ"). The IJ denied Hu's claims for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("Convention Against Torture"). We have jurisdiction to review the petition pursuant to 8 U.S.C. § 1252(a)(1), and for the reasons set forth below, we will deny the petition.

I.

Because we write solely for the benefit of the parties, we will set forth only those facts necessary to our analysis. Hu entered the United States without inspection through Chicago on February 9, 2001 and was detained and interviewed by asylum officers on the same date. Shortly thereafter, asylum officers conducted two additional interviews with Hu, on February 13, 2001 and February 28, 2001, respectively. On May 16, 2001, the former Immigration and Naturalization Service[1] ("INS") initiated removal proceedings against Hu, alleging he was inadmissable as an immigrant not in possession of valid entry documents in violation of section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C § 1182(a)(7)(A)(i)(I).

---

[1]On March 1, 2003, the INS ceased to exist and its functions were transferred to the newly formed Bureau of Immigration and Customs Enforcement, within the United States Department of Homeland Security. *See Knapik v. Ashcroft,* 384 F.3d 84, 86 n.2 (3d Cir. 2004) (citing Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 452, 471, 116 Stat. 2135).

At a removal hearing on May 16, 2001, Hu conceded removability but sought asylum, withholding of removal, and relief under the Convention Against Torture. Hu submitted two asylum applications: one dated May 7, 2001 and another dated August 20, 2002. He also testified at a merits hearing before the IJ on June 13, 2003. His claim for relief is based on alleged persecution by the Chinese government on account of his and his family's Christian beliefs.

In his initial interview on February 9, 2001, the day Hu entered the United States, Hu stated that his purpose in coming to the United States was to study, and that a friend of his father's would pay for him to study in the United States. At no time during this initial interview did Hu mention religion or religious persecution. In addition, Hu said he had never been arrested.

Four days later, during a second asylum interview, Hu stated he did not want to return to China because he would be arrested on account of his and his father's Christian beliefs. However, consistent with the first interview, Hu again said he had never been arrested in China or any other country. And, when asked about the purpose of his trip, Hu again stated he came to the United States to study.

In the third and final interview on February 28, 2001, Hu told the asylum officer that, prior to coming to the United States, he and his brother had been arrested and detained in China because of their father's religious beliefs. Hu stated that he was released after ten days and told to find his father, and that his brother was still being

3

detained.

At the June 13, 2003 merits hearing, Hu testified that he and his family are Christian and belonged to the Cheng Guan Church, a secret, underground Christian church in Lian Jiang that his parents attended regularly. Hu testified that he lived in a school dormitory, away from home, beginning in 1995, but attended the church whenever he returned home from school.

Hu also provided additional details about the events leading up to his flight from China. He alleged he was home from school on May 4, 2000 when Chinese government officials came to his home to arrest his parents for practicing Christianity. Because his parents were not home, the officials arrested Hu and his brother. Hu claimed he was detained for ten days, during which time "nothing much happened." A.R. at 127. He was released on May 14, 2000 and told to find his parents and tell them to report to the police. At the time of the hearing, Hu stated his brother was still in detention.

Hu testified that after he was released from detention he went to look for his parents at his aunt's house and, not finding them there, went back to his house and waited for ten days. When his parents did not return home, Hu went to Yun Nan, a province about ten hours away. He stayed in Yun Nan for about seven to eight months, where he rented an apartment from his sister's friend and worked side jobs, including a job at a bookstore shelving books. Hu did not attend church in Yun Nan because he did not know the people and his sister told him not to go out. Hu also testified that he last saw his

4

parents in Yun Nan and that his sister told him that they left China, but he did not know where they were at the time of the hearing. However, on his May 7, 2001 asylum application, Hu indicated that his parents' "Current Location" was "Lian Jiang, China." A.R. at 299. Moreover, when asked if his parents were in the United States, Hu responded unequivocally that they were not.

Hu left Yun Nan on February 4, 2001 and arrived in the United States on February 9, 2001 by way of India and England. He testified that he began living in Philadelphia in August 2001 and attended a church near the Philadelphia airport. However, he did not know the name of the church and admitted that he rarely attended the services, which were conducted in English, because he could not understand the language. Hu stated he was unaware of churches in Chinatown that held services in the Chinese language.

Hu provided the IJ with three pieces of documentary evidence: a copy of a baptism certificate card from the Cheng Guan Church indicating Hu was baptized in 1998; a copy of a verification letter from the Cheng Guan Church indicating Hu arrived in the United States in 2000 and Hu's family are all "Christian followers," A.R. at 277; and a copy of the Chinese government's Household Registration for Hu's family.

On June 13, 2003, the IJ issued an oral decision in Hu's case. She found his testimony was "totally fabricated" and denied his claims for asylum, withholding of removal, and relief under the Convention Against Torture. A.R. at 60. The BIA affirmed the IJ's decision without opinion on March 10, 2005. Hu filed a timely appeal, seeking

review of the IJ's adverse credibility determination.

## II.

Where the BIA affirms the IJ's decision without opinion, this Court reviews the decision of the IJ. *Partyka v. Attorney General*, 417 F.3d 408, 411 (3d Cir. 2005). We review agency findings of fact, including an adverse credibility determination, under the substantial evidence standard. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). Under this standard, we look to whether the decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)) (internal quotations omitted). An agency's factual findings will be upheld unless a "reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Gao*, 299 F.3d at 272.

## III.

Hu contends the IJ's credibility determination is not supported by substantial evidence because the record is "replete with nonsensical and obviously biased observations on the part of the IJ," who was inclined to "fish" for inconsistencies. Hu's Br. at 8.

An adverse credibility finding must be supported by "specific cogent reasons" that "bear a legitimate nexus to the finding." *Gao*, 299 F.3d at 276. "We look at an adverse credibility determination to ensure that it was appropriately based on inconsistent

6

statements, contradictory evidences, and inherently improbable testimony in view of the background evidence on country conditions." *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003) (internal citation and quotations omitted). Adverse credibility findings based on "speculation or conjecture, rather than on evidence in the record, are reversible." *Gao*, 299 F.3d at 272. Furthermore, the underlying basis of an adverse credibility determination must go to the heart of the alien's claims.[2] *Id.*

In a thorough and well-written opinion, the IJ provided numerous specific, cogent reasons to support her finding that Hu was not credible. First, she pointed out that Hu's stated reason for coming to the United States changed over the course of his three separate asylum interviews in February 2001. The IJ credited Hu's statement that he came to the United States to study because it was the reason Hu gave when he first arrived in the United States. She noted that Hu's story changed "only after he was placed in detention, along with other individuals from China." A.R. at 25. The IJ also identified inconsistencies between Hu's testimony and his I-589 applications. On both applications, Hu indicated his parents lived in Liang Jiang, China, but he testified at the hearing that his parents had fled China and he did not know their current location. Moreover, on his

_____

[2]The Real ID Act of 2005 changes the standards governing credibility determinations, such that a determination may be made "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claims." Pub. L. 109-13, div. B, § 101(a)(3)(B)(iii), 119 Stat. 231, 303 (to be codified at 8 U.S.C. § 1158(b)(1)(B)(iii)). This provision applies only where an alien has filed for asylum, withholding of removal, or other relief after the effective date of the Act, May 11, 2005. Because Hu applied for relief in 2001, this provision does not apply to his claims.

original I-589 application, Hu indicated he lived in Liang Jiang from his birth in 1983 until he left China on February 4, 2001. However, at the hearing, Hu testified that he fled to Yun Nan after he was released from detention and lived there for seven to eight months before coming to the United States. The IJ concluded, "the respondent may have traveled to Yun Nan to work for a while, but he certainly was not in hiding if he was working different jobs and working in a bookstore, shelving books. The respondent was not in hiding." A.R. at 57.

The IJ also concluded that Hu's extremely limited knowledge of Christianity made his claim incredible. For example, although he testified he had read the Bible, Hu could not identify the difference between the Old and New Testaments and erroneously identified the Book of Matthew as being in the Old Testament. She also questioned his statement that he was unaware of churches in Chinatown that conducted services in the Chinese language.

Furthermore, the IJ concluded she could give little weight to Hu's documentary evidence. She found it implausible that a secret, underground church hiding from the Chinese government would issue laminated baptismal certificates with its address and photographs of church members. She also questioned why the certificate provides Hu's exact date of birth but lists only the year in which Hu was baptized, finding it "strange" that a baptism card "would give more information about the individual's birth than the individual's baptism." A.R. at 53.

In sum, the IJ found that Hu's testimony was "totally fabricated" and concluded that his purpose in coming to the United States, as he told officials when he first arrived, was to continue his studies.[3] She concluded that "each time the respondent tells his story, the story becomes more and more elaborate." A.R. at 57.

The IJ cited numerous instances in which Hu's testimony was vague, inconsistent, and contradictory. She has provided specific, cogent reasons, supported by the record, for reaching an adverse credibility determination. Furthermore, these reasons go to the heart of Hu's claim of religious persecution and could lead a reasonable adjudicator to doubt the veracity of his claim. Accordingly, we are not compelled to overturn the IJ's determination that Hu lacked credibility.

IV.

We have considered all other arguments made by the parties on appeal and conclude that no further discussion is necessary.[4] For the foregoing reasons, we find that substantial evidence supports the IJ's decision and we will deny the petition for review.

---

[3]At one point during his testimony, when asked why he did not want to go back to China, Hu responded, "because America is better than China" and because "I don't have that much freedom in China." A.R. at 143.

[4]Although not supported by any argument or citation in his brief, Hu made a conclusory assertion that the BIA erred in summarily affirming the IJ without opinion. As the government points out, Hu has abandoned and waived this argument because it was not pursued in the argument section of Hu's brief to this Court. *Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993). However, even if we were to consider the argument, we find it lacks merit. *See* 8 C.F.R. § 1003.1(e)(4) (federal regulation governing BIA procedures that provides for affirmance without opinion).

9