

Villanova University School of Law Digital Repository

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-30-2008

# Andres v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4110

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Andres v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1670.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1670

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4110
_____

ROBERT HENRY ANDRES

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES

Respondent.
_____

On Petition for Review of a Final Order
of the Board of Immigration Appeals
(No. A77 027 695)

Honorable Eugene Pugliese, Immigration Judge
_____

Submitted Under Third Circuit LAR 34.1(a)
January 8, 2008

Before:  FUENTES and JORDAN, *Circuit Judges*
and DITTER*, *District Judge.*

(Filed: January 30, 2008)
_____

OPINION OF THE COURT
_____

*Honorable J. William Ditter, Jr., District Court Judge for the Eastern District of
Pennsylvania, sitting by designation.

DITTER, *District Judge*.

This is an appeal from a Board of Immigration Appeals' ("BIA") final order of removal. The BIA affirmed the immigration judge's determination that: 1) Petitioner's conviction for aggravated assault was a crime of moral turpitude making him subject to removal; 2) Petitioner was not eligible for an Immigration and Nationality Act § 212(h) waiver; and 3) Petitioner's change in status from a conditional to a permanent legal resident had no impact on the issue of his removability.

For the reasons that follow we affirm the order of the BIA.

Robert Henry Andres is a 30 year-old divorced male, native and citizen of Peru, and father of three minor children. He and his parents are lawful permanent residents. He has siblings who are citizens and reside in New Jersey.

Andres was admitted as a visitor in June 1996. He married a United States citizen in September 1997, and on October 7, 1998, his status was adjusted to that of a conditional lawful permanent resident based on his marriage. On September 16, 2002, Andres pleaded guilty to attempting to cause significant bodily injury to his wife. Andres was placed on probation for two years with conditions that included community service and anger management counseling. In June 2003, Andres divorced his wife. He is supporting his children pursuant to a court-imposed order.

In March, 2004, Andres returned to the United States from a trip to Peru and was placed in removal proceedings because of his criminal conviction. On July 26, 2004, with

2

the removal proceedings still open, Andres' conditional status was changed to permanent lawful resident status.

Following several hearings, the immigration judge found Andres removable as an alien convicted of a crime of moral turpitude. In his March 31, 2005 oral decision, the immigration judge also denied Andres' request for a Section 212(h) waiver because Andres could not establish continuous residency for at least seven years immediately preceding the initiation of the removal proceedings.[1] The immigration judge further concluded that Andres' change in status from conditional permanent lawful resident to permanent lawful resident had no bearing on the removal proceedings as it was merely a determination that his marriage was *bona fide* and did not address any issues concerning his status resulting from his criminal record. In other words, a determination by the United States Citizenship and Immigration Services concerning the validity of Andres' marriage did not impact the prior decision of the Department of Homeland Security to pursue a petition for removal based on a criminal conviction that occurred during his residency.

Generally, whether an alien's crime involves moral turpitude is determined by the criminal statute.[2] *Partyka v. Attorney General*, 417 F.3d 408, 411 (3d Cir. 2005) (citing

---

[1] As noted by the BIA, Andres' lawful residence in the United States began in October 1998, and removal proceedings were instituted against him less than six years later, in March of 2004.

[2] The relevant statute provides that a person is guilty of aggravated assault if he "[a]ttempts to cause significant bodily injury to another or causes significant bodily injury purposely or knowingly or, under circumstances manifesting extreme indifference to the value of human life recklessly causes such significant bodily injury." *See* N.J. Rev. Stat.

*Knapik v. Ashcroft*, 384 F.3d 84, 88, 90-91 (3d Cir. 2004)). However, where a statute also includes lesser offenses, the facts must be evaluated to determine whether or not the alien was convicted under that part of the statute that defines a crime involving moral turpitude. *Id.* Andres contends the immigration judge decided that his was a crime involving moral turpitude without evaluating the underlying facts as required when a statute includes non-turpitudinous acts. We disagree.

Andres is correct that during the July 29, 2004, hearing the immigration judge stated: "I'm tempted to make a finding right now, Mr. Fernandez. An aggravated assault tends to be a CIMT." *A.R.* at 67. However, the immigration judge gave counsel the opportunity to present evidence on this issue, and after making an initial finding that the charges were sustained, he continued the case to October to permit counsel additional time to prepare his arguments and agreed to revisit the issue of moral turpitude then. *A.R.* at 68. At that hearing, Andres abandoned this claim. No evidence was offered nor argument made that his crime did not involve moral turpitude; instead, the hearing concerned the effect of Andres' change of status from conditional to permanent resident alien and his eligibility for a § 212(h) waiver. *A.R.* at 73-77. When the immigration judge noted that Andres had previously denied the charge was for a crime involving moral turpitude, counsel responded: "Yeah, well we're denying because they're charging him with inadmissibility, but after they charged him with inadmissibility, they said here you are,

---

2C:12-1b(7).

4

you're admitted." *A.R.* at 76. After a final hearing on March 31, 2005, the immigration judge found Andres' crime was one involving moral turpitude, specifically relying on the underlying indictment and judgment of conviction.

The BIA agreed with the immigration judge and affirmed his decision. Having also examined the record of the state criminal proceedings, the BIA concluded that the crime for which Andres' was convicted had the required *mens rea* to constitute a crime involving moral turpitude, reasoning that:

> Although the statute is divisible, the indictment in this case indicates that the respondent was charged with violating the portion of N.J. Rev. Stat. §2C:12-1(b)(7) prohibiting "attempts to cause significant bodily injury to another." (See Exh. 2). An attempt to cause injury necessarily includes the intent to cause injury. *Matter of G-R-,* 2 I & N Dec. 733, 735 (BIA 1947). The United States Court of Appeals for the Third Circuit, where this case arises, has noted that an aggravated assault conviction involving the intentional infliction of bodily injury would be one involving moral turpitude. *Partyka v. Attorney General*, 417 F.3d 408, 416 (3d Cir. 2005). Additionally, we note that the fact that, according to the indictment, the victim was the respondent's wife means his conviction would involve moral turpitude even if it required only a reckless state of mind. *Matter of Fualaau*, 21 I & N Dec. 475 (BIA 1996) (a reckless state of mind coupled with morally turpitudinous conduct can make an offense one of moral turpitude); *Matter of Tran*, 21 I & N Dec. 291, 294 (BIA 1996) (infliction of bodily harm on one's spouse is an act of depravity).

*A.R.* at 2. The BIA also agreed that Andres' resident status merely reflected its conditional nature but did not effect the applicability of the seven year residence requirement. Thus, Andres was not eligible for a § 212(h) waiver. *A.R.* at 2-3.

Judicial review of removal orders is limited. Unless an alien has raised a constitutional claim or a question of law, an order removing him for having committed a

5

crime involving moral turpitude is not subject to judicial review. 8 U.S.C. § 1252(a)(2)(C); 1252(a)(2)(D). Here Andres has raised a question of law: whether his crime was one involving moral turpitude. If his conviction was for a crime involving moral turpitude, no further judicial review is authorized. *See Alaka v. Attorney General*, 456 F.3d 88, 102-103 (3d Cir. 2006).

"The hallmark of moral turpitude is a reprehensible act committed with an appreciable level of consciousness or deliberation." *Partyka*, 417 F.3d at 414. Corrupt scienter is the touchstone of moral turpitude. *Id.* at 413 (citing *Michel v. INS*, 206 F.3d 253, 263 (2d Cir. 2000)).

Our review of the administrative record travels the same path as did the BIA's analysis. First, the applicable New Jersey statute makes unlawful an attempt to cause significant bodily injury, actually doing so, or recklessly causing significant bodily injury under circumstances manifesting extreme indifference to the value of human life.

We need not concern ourselves with the reckless part of the statute, extreme as the reckless conduct defined may be: the defendant pleaded guilty to the second count of an indictment that charged aggravated assault in that he did attempt to cause significant bodily injury to his wife. As did the BIA, we find that one who has been convicted of an attempt to cause injury of necessity intended to cause injury. *Partyka*, 417 F.3d at 412 n.3 (citing *United States v. Rebelo*, 358 F. Supp. 2d 400, 416 (D.N.J. 2005)("It is blackletter

6

law that criminal attempt requires specific intent.")). Intending to cause significant bodily injury involves moral turpitude.

Quite apart from the indictment and judgment of conviction, Andres' own description of what he did establishes he intended to cause significant bodily injury and thus his was a crime of moral turpitude.

> I previously had a restraining order and I violated the restraining order by going to her house. She asked me for money for the children. She had called me before asking me to pass by because my daughter had a fever. After she asked me for the money we started arguing because I didn't have the money. She started yelling then I pushed her, then some neighbor called the police. I had my hands around her neck and I pushed her in front of my children. The police came, she told them that I had a restraining order and they put me in jail.

*A.R.* at 175.

Having agreed with the BIA that Andres was convicted of a crime involving moral turpitude, we are precluded from reviewing Andres' § 212(h) waiver claim or the impact that his change of status had on his removability.[3]

---

[3] These claims fail to raise a constitutional or legal issue that would overcome the jurisdictional bar of § 1252(a)(2)(C). Andres' assertion that the more than seven year residency requirement in § 212(h) was not applicable to him because of the conditional nature of his lawful permanent resident status is without merit. *See* 8 C.F.R. § 216.1 ("All references within this chapter to lawful permanent residents apply equally to conditional permanent residents, unless otherwise specified."). Whether his status was conditional or not, he had been lawfully admitted for permanent residence and the durational requirements of § 212(h) applied.